Leo **BLANK, Leo Blank, M.D., Inc., Marc Sokolay, and Kirk Togias, Plaintiffs,**

v.

**PREVENTIVE HEALTH PROGRAMS, INC., Defendant.**

**Civ. A. No. CV180–21.**

United States District Court, S. D. Georgia, Augusta Division.

Dec. 10, 1980.

---

John C. Bell, Jr., Augusta, Ga., John S. Dalis, Augusta, Ga., for plaintiffs.

William Byrd Warlick, Charles C. Stebbins, III, Nixon, Yow, Waller & Capers, Augusta, Ga., for defendant.

**418**

## ORDER

BOWEN, District Judge.

In a five count complaint, plaintiffs, all certified professional radiologists, brought this action against Preventive Health Programs, Inc. [PHP] alleging: (1) a claim for amounts due plaintiffs under contracts with PHP; (2) a violation of section one of the Sherman Act, 15 U.S.C. § 1 (1976); (3) a violation of the laws of the State of Missouri proscribing unreasonable restraints of trade, Mo.Rev.Stat. § 416.031; (4) an entitlement to a declaratory judgment that certain provisions of plaintiffs' contracts with PHP are illegal; and (5) a quantum meruit claim for the fair value of plaintiffs' services rendered to PHP. Presently before the Court is the motion of defendant PHP for summary judgment.

Based upon the pleadings, answers to interrogatories, and depositions on file, the following facts are uncontested. PHP was under contract with the United States Department of Defense to provide radiological services at the Dwight D. Eisenhower Hospital, Fort Gordon, Georgia. The contract expired on September 30, 1979. Each of the plaintiffs executed substantially similar contracts with PHP to perform, in part, the required radiological work. Plaintiffs operated under these contracts with PHP until the expiration of the contracts on September 30, 1980. At the conclusion of PHP's contract with the Department of Defense, efforts to obtain a new contract were unsuccessful, and the new contract for radiological services was awarded instead to Health Care Systems, Inc., a competitor of

PHP. Thereafter, on October 1, 1979, plaintiffs performed radiological work at Fort Gordon pursuant to contracts entered into with Health Care Systems, Inc. Following this action, the last payments due plaintiffs from PHP were not paid.

The crux of plaintiffs' Sherman Act claim, 15 U.S.C. § 1, is a post–employment restraint in paragraph 8 of their contracts with PHP.[1] In seeking treble damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15, plaintiffs contend that this contractual provision unreasonably restrains their ability to freely bargain to perform their services and has a chilling effect on PHP's competitors in bidding to secure contracts to provide radiological work at various hospitals. Defendant argues, in support of its motion for summary judgment, that plaintiffs have suffered no "antitrust injury" and therefore lack standing to assert an antitrust claim under section 4 of the Clayton Act.

The parties agree that post–employment covenants not to compete are subject to federal court review under section 1 of the Sherman Act. See Newburger, Loeb & Co. v. Gross, 563 F.2d 1057, 1082 (2d Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); Bravman v. Bassett Furniture Ind., Inc., 552 F.2d 90 (3d Cir.) cert. denied, 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 80 (1977); Bradford v. New York Times Co., 501 F.2d 51 (2d Cir. 1974); Frackowiak v. Farmers Ins. Co., Inc., 411 F.Supp. 1309 (D.Kan.1976); Alders v. AFA Corp., 353 F.Supp. 654 (S.D.Fla.1973), aff'd, 490 F.2d 990 (1974). In determining wheth-

---

1. Paragraph 8 provides in full:

   Radiologist agrees that until January 1, 1983, he will not directly or indirectly own, manage, operate, control, be employed by, participate in (as a sole practitioner or otherwise) or be connected in any manner with the ownership, management, operation or control of any business or medical activity (as a sole practitioner or otherwise), no matter what its form or nature, engaged in the delivery of professional radiological services at Fort Gordon, Georgia, or at any Government medical installation within a radius of 200 miles thereof. This paragraph shall apply in any and all circumstances and without regard to

   the termination for any reason (by breach or otherwise) of this agreement. The covenant not to compete contained in this paragraph shall survive the expiration, breach, or termination of this agreement for any reason whatsoever. In this connection, Radiologist agrees and understands that a breach by [him] would do PHPI irreparable injury for which there is no adequate remedy at law and agrees to submit himself to the mandatory injunctive powers of a court of equity having jurisdiction of Radiologist in order to secure compliance herewith. Any condition within this paragraph may be waived with prior approval of PHPI.

er such restraints violate the prohibitions of the Sherman Act, courts have adopted the "rule of reason" analysis formulated by the Supreme Court, *see Standard Oil Co. v. United States,* 221 U.S. 1, 31, 31 S.Ct. 502, 504, 55 L.Ed. 619 (1911), which entails "consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption." *United States v. Topco Associates,* 405 U.S. 596, 607, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972). Thus, post-employment restraints, such as those at issue in this case, do not fall within the narrow category of *per se* violations of the Sherman Act. *Bradford, supra,* 501 F.2d at 60. *But cf. Newburger, supra,* 563 F.2d at 1082 ("Restraints on postemployment competition that serve no legitimate purpose at the time they are adopted would be per se invalid."). While recognizing that paragraph 8 of PHP's contract with plaintiffs may be subject to Sherman Act scrutiny in the abstract, defendant maintains that plaintiffs' federal antitrust claim is not actionable since certain threshold standing requirements have not be satisfied.

Section 4 of the Clayton Act grants standing for damage actions under the antitrust laws to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Although the language of section 4 would confer a cause of action on persons only remotely injured by antitrust violations, courts have narrowed the scope of the remedy by "establish[ing] a standing requirement more demanding than that required in other types of actions." *Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172, 1174 (5th Cir. 1976); *see Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262 n.14, 92 S.Ct. 885, 891, n.14, 31 L.Ed.2d 184 (1973). Construing *Hawaii v. Standard Oil Co., supra,* and *Perkins v. Standard Oil,* 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), the Fifth Circuit concluded that to have standing under section 4 a party must suffer injury to commercial interests or enterprises and that the injury must be the direct result of the unlawful activity. *Tug-*

*boat, Inc., supra,* 534 F.2d at 1175. Additionally, as recently held by the Supreme Court, the injury must be of the type the antitrust laws were intended to prevent. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *see Midland Telecasting Co. v. Midessa Television Co.,* 617 F.2d 1141, 1145 (5th Cir. 1980); *Donovan Construction Co. v. Florida Telephone Corp.,* 564 F.2d 1191, 1192 (5th Cir. 1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1878, 56 L.Ed.2d 389 (1978).

■ In discussing this last criteria for standing, that plaintiff must suffer *antitrust* injury, the Supreme Court reiterated that "[t]he antitrust laws . . . were enacted for 'the protection of *competition,* not *competitors*'." 429 U.S. at 488, 97 S.Ct. at 697 (emphasis in original) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)). Thus, section 4 standing is contingent upon injury caused by a reduction in competition flowing from defendant's acts. As succinctly stated by the Second Circuit in *GAF Corp. v. Circle Floor Co., Inc.,* 463 F.2d 752, 759 (2d Cir. 1972), *cert. dismissed,* 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973), "only a person whose competitive business position was harmed by the *anticompetitive* effects of the alleged restraint of trade can maintain a treble damage action."

■ Plaintiffs' damages in this action, as originally stated in responses to defendant's interrogatories, were for losses suffered by PHP's failure to tender the final payments due plaintiffs under their contracts. While these injuries may give rise to a breach of contract claim, such damages cannot be characterized as antitrust injuries remediable by a treble damages action. The Court is unable to conclude that plaintiffs' asserted loss was the direct result of a diminution in competition produced by the anticompetitive effects, if any, of the post–employment restraints in plaintiffs' contracts with PHP. As recognized by the Seventh Circuit, a claim for unpaid compensation alleged to be due under a contract for services rendered

during periods of actual employment is not actionable under the antitrust laws. *Nichols v. Spencer International Press, Inc.*, 371 F.2d 332, 337 (7th Cir. 1967).

By amended answers to defendant's interrogatories, however, plaintiffs assert additional injuries. Specifically, plaintiffs claim that the post–employment restraint chilled their ability to freely offer their skills in a competitive free market and compete with defendant to provide radiological services. Yet, the uncontroverted facts in this case show that upon expiration of their contracts with PHP, plaintiffs immediately began work performing the same radiological services under contracts with a competitor of PHP. Moreover, at least one plaintiff received greater annual compensation under the new contract than under the PHP contract.

■ While the Court recognizes that summary judgment is disfavored in antitrust cases, *see Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1961); *Solomon v. Houston Corrugated Box Co., Inc.*, 526 F.2d 389, 393 (5th Cir. 1976), conclusory allegations of antitrust violations are not sufficient to raise a triable issue of fact. *See id.; Southern Concrete Co. v. United States Steel Corp.*, 535 F.2d 313, 318 (5th Cir. 1976). The Supreme Court has concluded that:

> While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full–dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint.

*First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). In the context of standing, therefore, some evidentiary showing is required that the complainant was causally injured by the alleged antitrust violation. *See California Computer Products, Inc. v. International Business Machines Corp.*, 613 F.2d 727, 732 (9th Cir. 1979). The Court concludes that plaintiffs have not made a sufficient showing in this regard to withstand PHP's motion for summary judgment. Accordingly, defendant's motion for summary judgment on Count II of plaintiffs' complaint is granted.[2]

The same conclusion follows for plaintiffs' antitrust claim under the laws of the State of Missouri set forth in Count III of the complaint. Under Missouri law "[e]very contract, combination or conspiracy in restraint of trade or commerce in [the] state is unlawful," Mo.Rev.Stat. § 416.031, and "[a]ny person . . . injured in his business or property by reason of anything . . . declared unlawful [under Missouri's antitrust laws], may sue . . . for damages sustained by him, and if the judgment is for the plaintiff he shall be awarded threefold damages." *Id.* § 416.121. As with most state antitrust laws, *see* 54 Am.Jur.2d *Monopolies* § 453 (1971), the Missouri statutes "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes." Mo.Rev.Stat. § 416.141. Thus, the foregoing analysis with respect to plaintiffs' standing under section 4 of the Clayton Act applies to plaintiffs' state antitrust claim. Accordingly, defendant's motion for summary judgment on Count III of plaintiffs' complaint is granted.

■ The remaining issue for decision is whether the Court has jurisdiction over plaintiffs' other state claims and the claim for declaratory judgment. Since plaintiffs' federal antitrust claim has been disposed of

---

**2.** Plaintiffs contend that disposition of defendant's motion for summary judgment is premature since plaintiffs' motion to compel discovery is still outstanding. The motion to compel seeks the production of "correct copies of all contracts which the defendant has entered into with any radiologist or professional corporations composed of radiologists." While these documents might have some bearing on the overall market effect of defendant's action, the Court does not view PHP's past contracts with other radiologists as relevant on the issue of plaintiffs' standing.

by summary judgment for defendant, jurisdiction over plaintiffs' state law claims may not be maintained on the basis of pendent jurisdiction. *See Pharo v. Smith*, 621 F.2d 656 (5th Cir. 1980); *Daniels v. All Steel Equipment, Inc.*, 590 F.2d 111 (5th Cir. 1979). Thus, for the Court to retain jurisdiction, an independent basis for federal subject matter jurisdiction must exist.

To meet this requirement, plaintiffs have asserted diversity jurisdiction under 28 U.S.C. § 1332(a). Complete diversity exists between plaintiffs and defendant, and plaintiffs have alleged each party's citizenship with the requisite specificity. *See American Motorists Insurance Co. v. American Employers' Insurance Co.*, 600 F.2d 15, 16 (5th Cir. 1979). Defendant contends, however, that plaintiffs' claims do not meet the required jurisdictional amount.

█ The Court finds that plaintiffs' individual claims do not exceed the threshold jurisdictional amount. Furthermore, plaintiffs may not aggregate their respective claims to show an amount in controversy in excess of $10,000.00. *See Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1974); *Niagara Fire Insurance Co. v. Dyess Furniture Co.*, 292 F.2d 232 (5th Cir. 1961). Yet, in addition to their base claims, each plaintiff seeks punitive damages and attorney's fees. Plaintiffs argue that when punitive damages and attorney's fees are considered each plaintiff has over $10,000.00 in controversy.

█ It is well established that attorney's fees and punitive damages, when allowed by applicable state law, may be included in determining the amount in controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Premier Industry Corp. v. Texas Industry Fastener Co.*, 450 F.2d 444 (5th Cir. 1971). Of course, the operative phrase of this principle is "when allowed by applicable state law." Since Georgia law provides that "[e]xemplary damages can never be allowed in cases arising on contracts," Ga.Code Ann. § 20-1405 (1977), plaintiffs' claims for punitive damages, when their case sounds in contract, may not

be considered in computing the jurisdictional amount. Attorney's fees, on the other hand, may be recovered under Georgia law when it is "shown that the defendant was stubbornly litigious, put the plaintiff to unnecessary trouble and expense, or acted in bad faith." *Moon v. Georgia Power Co.*, 127 Ga.App. 524, 527, 194 S.E.2d 348 (1972); *see* Ga.Code § 20-1404 (1977). Plaintiff need only establish the existence of one of these conditions to recover attorney's fees. *See Altamaha Convalescent Center, Inc. v. Godwin*, 137 Ga.App. 394, 395, 224 S.E.2d 76 (1976).

█ The appropriate standard to justify dismissal when the amount in controversy is challenged is whether it appears to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). This standard is often narrowly construed to support a finding of subject matter jurisdiction. *See, e. g., Dassinger v. South Central Bell Telephone Co.*, 505 F.2d 672 (5th Cir. 1974); *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129 (5th Cir. 1969). To maintain jurisdiction "[t]he party seeking to invoke the jurisdiction of the federal courts has the burden of proving [the requisite] amount by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount." 14 C. Wright & A. Miller, *Federal Practice and Procedure* § 3702, at 373 (1976).

█ While each plaintiff in this case seeks attorney's fees, no specific amount is alleged on the face of the complaint. The Court recognizes that "[w]hen the applicable substantive law makes the award of an attorney's fee discretionary, [as under Georgia law where the jury may allow them], a claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy." C. Wright & A. Miller, *supra* § 3712, at 507. Yet, the Court is not in a position to apply the "legal certainty" test with any degree of rationality when the

amount of the requested fee is not stated in the complaint. The Court must therefore conclude that the allegations on the face of the complaint are not sufficient to carry plaintiffs' burden to show the threshold jurisdictional amount. "Normally, [however,] if the complaint is defective, the court will grant leave to have it amended to cure the jurisdictional defect." 5 C. Wright & A. Miller, *supra*, § 1350, at 550.

Accordingly, Counts I, IV, and V of plaintiffs' complaint are dismissed without prejudice with leave to amend to show the jurisdictional amount with the requisite specificity.

In so holding, the Court makes no ruling on whether plaintiffs may recover under both the contract count and the quantum meruit count. *See E. H. Siler Realty & Business Broker, Inc. v. Darty*, 143 Ga.App. 433, 435, 238 S.E.2d 766 (1977) ("It is settled law that a recovery on quantum meruit is not authorized upon suit on an express contract."). Presumably, plaintiffs have pled these counts in the alternative. Fed.R. Civ.P. 8(a).