**Phyllis PENN and Kenneth Penn, Plaintiffs,**

v.

**WAL–MART STORES, INC., John Doe, and Jane Roe, Defendants.**

**No. CIV.A. 00–02522 (MLC).**

United States District Court, D. New Jersey.

Sept. 29, 2000.

As Amended Sept. 29, 2000.

558

Robert G. Shinn, Woodland, McCoy & Shinn, Manahawkin, NJ, for Plaintiffs Phyllis Penn and Kenneth Penn.

Richard David Millet, Millet & Hermes, Somerville, NJ, for Defendant Wal–Mart Stores, Inc.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of plaintiffs Phyllis Penn and Kenneth Penn ("plaintiffs") to remand the above-captioned case to the Superior Court of New Jersey, Law Division, Ocean County ("Superior Court of New Jersey"). The defendant Wal–Mart Stores, Inc. ("Wal–Mart") earlier filed a Notice to remove this case from the Superior Court of New Jersey to this Court. Plaintiffs also seek the award of attorneys' fees and costs arising from the removal as well as permission to file a certification detailing the time spent as a result of the removal. For the reasons expressed below, plaintiffs' motion is granted in part and denied in part. The Court grants the motion as to the request to remand this case to the Superior Court of New Jersey but denies the request for attorneys' fees and costs.

### BACKGROUND

Plaintiffs, who are New Jersey residents, filed the Complaint in this matter in the Superior Court of New Jersey on or about February 14, 2000. (Compl.) The Complaint alleges that Phyllis Penn, a patron of Wal–Mart's store in Manahawkin, New Jersey, fell while walking through Wal–Mart's parking facility on February 16, 1998. (Id. ¶¶ 1–3.) The Complaint further alleges that an unsafe condition within Wal–Mart's control caused this fall and that Wal–Mart breached its duty of care to Phyllis Penn by failing to maintain its premises properly. (Id. ¶¶ 3, 5.) As a result of this fall, Phyllis Penn allegedly suffered "severe injuries which required medical treatment." (Id. ¶ 4.) In particular, plaintiffs claim that "[Phyllis Penn] suffered a tear in her knee ligaments that hold the joint together, as well as severe

sprains and other injuries." (Id. ¶ 6.) Phyllis Penn allegedly continues to suffer pain as a result of these injuries. (Id. ¶ 4.) The Complaint also asserts a loss of consortium claim on behalf of Phyllis Penn's husband, Kenneth Penn. (Id. ¶ 7.)

In the Complaint's ad damnum clause, "[p]laintiff prays for judgment against the [d]efendant for damages, Court costs, attorneys fees, and any other costs deemed just and proper by the Court." (Compl.) Though the Complaint does not specify a particular quantity of damages, the Civil Case Information Statement has a mark accompanying the item stating that present medical expenses are more than $2500. In addition, this Statement has a box for punitive damages that has not been marked.

Wal–Mart filed a Notice of Removal with this Court on May 25, 2000, having been served with the Complaint on or about May 12, 2000. (Not. of Removal ¶ 2.) Wal–Mart's basis for removal was diversity of citizenship.[1] The Notice asserts that diversity of citizenship exists between the plaintiffs, who are citizens of New Jersey, and Wal–Mart, a corporation organized under the laws of Delaware with its principal place of business in Arkansas. (Id. ¶ 5.) Furthermore, the Notice states that it was filed within thirty days of receipt by Wal–Mart of a copy of the pleading setting forth the claim upon which this case is based. (Id. ¶ 6.)

The Notice of Removal alleges that "the sum in controversy, exclusive of interest and costs, is in excess of $75,000." (Id. ¶ 5.) Plaintiffs' allegations of "severe" injuries and "a tear in her knee ligaments that hold the joint together, as well as severe sprains and other injuries" serve as the basis for this assertion of jurisdiction. (Id.)

---

1. Wal–Mart's Notice of Removal claims federal subject matter jurisdiction exists by virtue of 28 U.S.C. § 1331. (Not. of Removal ¶ 5.) 28 U.S.C. § 1331 provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Neither party alleges that any claim in this personal injury case arises under fed-

eral law. Wal–Mart, therefore, most likely intended to cite 28 U.S.C. § 1332(a) which provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States."

Plaintiffs moved to remand this case to the Superior Court of New Jersey on July 14, 2000 on the grounds that the amount in controversy requirement for diversity jurisdiction has not been satisfied because Wal–Mart has not shown that the value of plaintiffs' claims exceeds $75,000. Kristen M. Wilson, a law clerk at the law firm representing the plaintiffs, states that: (1) she has reviewed Phyllis Penn's medical bills and they are "substantially lower" than the $75,000 jurisdictional requirement, totaling $2,696.40, (Certif. of Kristen M. Wilson filed 7–14–00 ¶¶ 2, 5); (2) these medical bills, while subject to possible increases in the future, will remain substantially below the $75,000 requirement, (id. ¶ 5); (3) on June 2, 2000, she spoke with Tammy from Prudential Health Insurance who agreed to send photocopies of Phyllis Penn's medical bills from 1998 to "the present,"[2] (id. ¶ 4); (4) on June 2, 2000, she spoke with Phyllis Penn who informed her that her doctors stated they could do nothing further unless she decided to undergo knee surgery, (id. ¶ 3); and (5) Phyllis Penn told her that as of June 2, 2000 she had not chosen to undergo this surgery, (id.). Robert G. Shinn, plaintiffs' attorney, further certifies that, "[w]hile the [p]laintiff hopes to receive a substantial sum for her pain and injury, at the present time, there is no indication that the damages to the [p]laintiff, if in fact any are awarded, will exceed the jurisdictional sum." (Certif. of Robert G. Shinn, Esq. dated 6–7–00 ¶ 5.)

Plaintiffs contest Wal–Mart's "baseless allegation" that a "severe" injury is sufficient to satisfy the amount in controversy requirement. (Id. ¶¶ 6–7.) They argue that Wal–Mart must show by a preponderance of the evidence that plaintiffs' claims exceed $75,000. (Id.) According to the plaintiffs, WalMart has not met this burden.

■ Wal–Mart responds to plaintiffs' arguments by relying on: (1) Phyllis Penn's statement to Kristen M. Wilson that, according to her doctors, nothing further could be done for her unless she chose to have knee surgery and that she did not elect to undergo such surgery, (Aff. of Richard D. Millet, Esq. dated 6–23–00 ¶ 3); (2) the allegation that "in this day and age, it is not unusual, nor is it unexpected, that a jury will return a verdict in excess of $75,000 for an injury to the knee where surgery is recommended by the treating physician," (id. ¶ 4); (3) the absence of any medical reports or records accompanying the plaintiffs' motion to remand, (id.); (4) the possibility of an increase in the total amount of Phyllis Penn's medical bills, (id. ¶ 2); and (5) the language in the Complaint stating that Phyllis Penn suffered severe injuries, the amount of medical bills, and the surgery statement demonstrate that the value of plaintiffs' claims exceeds $75,000, (id. ¶ 5).[3]

---

**2.** It is unclear from the Certification which bills Ms. Wilson actually reviewed.

**3.** Both parties violated the prohibition of Local Civil Rule 7.2(a) against factual conclusions and legal arguments in affidavits and certifications. This rule states:

> Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject affiant to appropriate censure, sanctions, or both.

L. Civ. R. 7.2(a). This Rule applies to certifications as well. See, e.g., Assisted Living Assoc. v. Moorestown Twp., 996 F.Supp. 409, 442 (D.N.J.1998).

Robert G. Shinn's certification cites two cases, Imperial Spirits, USA, Inc. v. Trans Marine International Corp. and Mercante v. Preston Trucking Co, Inc., and contains legal arguments based on them. (Certif. of Robert G. Shinn, Esq. dated 6–7–00 ¶¶ 6–7.) The Court, pursuant to the above Rule, should ignore these citations and arguments. However, given the Court's obligation to remand removed cases whenever they do not fall under its subject-matter jurisdiction, 28 U.S.C. § 1447(c), this Court will proceed to consider whether removal is required. The alternative of a denial of this motion accompanied by an order to show cause why the Court should not dismiss for lack of subject-matter jurisdiction would be unnecessary because the parties have already received an opportunity to argue the merits of any remand.

## DISCUSSION

A defendant may remove a claim from a state court to a federal district court pursuant to 28 U.S.C. § 1441[4] and 28 U.S.C. § 1446.[5] To qualify for removal, the cause of action must be a claim "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). One basis of original jurisdiction is diversity jurisdiction or jurisdiction over civil actions between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Whenever this subject-matter jurisdiction is absent, the district court must remand the case to the state court when the plaintiff moves to remand or *sua sponte.* 28 U.S.C. § 1447(c).[6] Furthermore, "[a]n order remanding the case may require payment of just costs, and any actual expenses, including attorney fees, incurred as a result of removal." *Id.*

The defendant bears the burden of demonstrating the appropriateness of removal. As the party invoking federal jurisdiction, the defendant must prove the existence of the prerequisites of this jurisdiction. *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). If diversity of citizenship constitutes the basis of removal jurisdiction, the defendant must establish that the amount in controversy exceeds $75,000. *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 222 (3d Cir.1999) ("The burden of establishing the amount in controversy in removal cases rests on the defendant." (citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir. 1985))).

Where the complaint is "open-ended" and does not allege a specified amount, the district court should perform its "own independent appraisal of the value of the claim." *Angus v. Shiley Inc.,* 989 F.2d 142, 145–46 (3d Cir.1993) (citing *Corwin Jeep Sales & Serv., Inc. v. American Motors Sales Corp.,* 670 F.Supp. 591, 596 (M.D.Pa.1986)). The court should conduct "[a] reasonable reading of the value of the rights being litigated" and not focus on "the low end of an open-ended claim." *Id.*

The affidavit of Richard D. Millet also contains factual or legal arguments. It states that "[c]ertainly, in this day and age, it is not unusual, nor is it unexpected, that a jury will return a verdict in excess of $75,000.00 for an injury to the knee where surgery is recommended by the treating physician." (Aff. of Richard D. Millet, Esq. dated 6–23–00 ¶ 4.) Mr. Millet reaches the additional conclusion "that the language in the Complaint that the plaintiff sustained severe injuries, combined with the information in the Certification of Kristen M. Wilson clearly indicates that the case has a value in excess of $75,000.00." (*Id.* ¶ 5.) Under the Rule, the Court should ignore these statements. The Court, however, will still consider the truly factual assertions and conduct its "own independent appraisal" of whether the value of the plaintiffs' claims exceeds $75,000. *See Angus v. Shiley Inc.,* 989 F.2d 142, 145–46 (3d Cir.1993).

4. 28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

5. 28 U.S.C. § 1446(a) states:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

6. 28 U.S.C. § 1447(c)(1) provides:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

at 146 (citations omitted). Generally, the complaint determines the amount in controversy. *Angus*, 989 F.2d at 145 ("The general federal rule is to decide the amount in controversy from the complaint itself." (citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961))). The court, however, may also consider other evidence such as the defendant's notice of removal. *See, e.g., Imperial Spirits, USA Inc. v. Trans Marine Int'l Corp.*, No. CIV.A. 98–5469(JWB), 1999 WL 172292, at *2 (D.N.J. Feb. 17, 1999) (citations omitted). In making its assessment, the Court must strictly construe the removal provisions against removal and resolve all doubts in favor of remand. *Boyer*, 913 F.2d at 111 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

Although the law on such matters as who bears the burden of proving the existence of jurisdiction is clearly defined, the law on what the defendant actually has to demonstrate to satisfy the amount in controversy requirement is unsettled. The Court will now examine the various standards of proof and select that which we conclude should apply.

## I. *The Standard of Proof and Amount in Controversy Requirement*

In the absence of Third Circuit precedent on the issue of what the defendant needs to show to satisfy the amount in controversy requirement when the plaintiff alleges unspecified damages, the Court will adopt the preponderance of the evidence standard. This standard requires, in its preferred formulation, the removing defendant to prove that it is more likely than not that the amount in controversy exceeds $75,000. The Court adopts this standard, after considering alternative standards of proof used by other courts, because the preponderance of the evidence standard avoids the confusion associated with its major competitors, is supported by case law, and properly balances the congressional intention to limit removal and diversity jurisdiction with the pro-

tection of the defendant's statutory right to remove in appropriate circumstances. The Court will now discuss the alternative standards of proof.

## A. *Alternative Standards of Proof*

In the words of Judge Reed, describing courts within the Third Circuit but using language applicable to the federal judiciary as a whole, "[c]ourts ... are unencumbered by consistency in their characterization of defendant's burden of proving the amount in controversy on a motion to remand." *Irving v. Allstate Indem. Co.*, 97 F.Supp.2d 653, 654 (E.D.Pa.2000). Courts have employed such notions as legal certainty, preponderance of the evidence, and reasonable probability in an attempt to define the proper standard. It is impossible, however, to characterize the overall approaches based solely on this terminology because courts have used the same terms to describe different burdens of proof or have defined one standard of proof with the terminology associated with another standard.

Courts adopting legal certainty terminology have relied heavily on the United States Supreme Court's decision in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The Supreme Court stated, in a case involving the removal of an action in which the plaintiffs' complaint specifically sought damages in excess of the jurisdictional threshold, that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288–89, 58 S.Ct. 586. Courts applying the legal certainty standard, however, have not been consistent in their analysis in the context of unspecified damages.

Some district courts have imposed on the defendant the very heavy burden of proving to a legal certainty that the plaintiff's claims exceed the jurisdictional threshold. *See, e.g., Johnson v. Costco Wholesale*, No. CIV. A. 99–CV–3576, 1999 WL 740690, at *2 & n. 1 (E.D.Pa. Sept. 22,

1999) (embracing standard requiring "moving party to prove to a 'legal certainty' that the plaintiff's claims meet the jurisdictional amount"); *see also* 14C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3725, at 89 (3d ed.1998) ("One standard requires the defendant to show to 'a legal certainty' that the amount in controversy actually exceeds $75,000." (footnote omitted)); Alice M. Noble–Allgire, *Removal of Diversity Actions When the Amount in Controversy Cannot Be Deterimed from the Face of Plaintiff's Complaint: The Need for Judicial and Statutory Reform to Preserve Defendant's Equal Access to Federal Courts*, 62 Mo. L.Rev. 681, 694 & n. 30 (1997) (observing that some district courts interpret legal certainty test as requiring defendant to prove to legal certainty that claim exceeds requisite amount).

Other district courts have used the legal certainty concept to develop jurisdictionally expansive burdens of proof. Under one formulation, jurisdiction is proper if the defendant proves to a reasonable probability that the amount in controversy exceeds $75,000. *See, e.g., International Fleet Auto Sales, Inc. v. National Auto Credit & Agency Rent–A–Car*, No. CIV. A. 97–CV1675, 1999 WL 95258, at *4 n. 7 (E.D.Pa. Feb.22, 1999) (stating, in dicta, that Third Circuit has adopted "legal certainty" or "reasonable probability" standard when complaint does not allege specified damages exceeding jurisdictional requirement);[7] *see also* Noble–Allgire, *supra*, at 694 & nn. 31–32 (collecting district court decisions interpreting legal certainty test as mandating showing of probability or reasonable probability). Other courts have discussed or even embraced this probability test without any explicit reference to the concept of legal certainty. *See, e.g., Chaparro v. State Farm Ins. Co.*, No. Civ. A. 99–CV–2063, 1999 WL 961035, at *3–*4 (E.D.Pa. Oct.12, 1999) (adopting, in case in which complaint alleges that damages do not exceed jurisdictional minimum, "reasonable probability" test defined as requiring defendant to show "that a reasonable jury likely could value [p]laintiffs' losses at over $75,000"); *Johnson*, 1999 WL 740690, at *2 n. 1 (distinguishing between legal certainty, preponderance of evidence, and reasonable probability standards); *Mercante v. Preston Trucking Co.*, No. CIV. A. 96–5904, 1997 WL 230826, at *1 (E.D.Pa. May 1, 1997) (same). At least one court even embraced the standard of "reasonable possibility." *See, e.g., Ball v. Hershey Foods Corp.*, 842 F.Supp. 44, 47 (D.Conn.1993) (quoting *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659, 663 (7th Cir.1982)), *aff'd*, 14 F.3d 591 (2d Cir.1993). Other courts using legal certainty language have imposed an even less stringent requirement, sometimes called the converse or inverted legal certainty test, on the defendant by merely requiring proof that "it does NOT appear to a legal certainty that the claim is actually for less than the requisite jurisdictional amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir.1996) (criticizing application of "converse legal certainty test" to cases where plaintiffs allege unspecified damages); *see also Reiff v. Convergent Techs.*, Civ. A. No. 95–3575(JEI), 1995 WL 619944, at *3 (D.N.J. Oct.20, 1995) (adopting converse legal certainty standard) (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89, 58 S.Ct. 586; *Nelson v. Keefer*, 451 F.2d 289, 292–93 (3d Cir.1971)); *Mercante*, 1997 WL 230826, at *1 n. 2 (stating that

**7.** Judge Kelly relied on *International Fleet Auto Sales, Inc. v. National Auto Credit & Agency Rent–A–Car*, No. CIV. A. 97–CV–1675, 1999 WL 95258, at *4 n. 7 (E.D.Pa. Feb. 22, 1999), in deciding that the Third Circuit will apply the legal certainty standard. *Johnson v. Costco Wholesale*, No. CIV. A. 99–CV–3576, 1999 WL 740690, at *2 & n. 1 (E.D.Pa. Sept. 22, 1999). Judge Kelly, however, distinguished between the legal certainty and reasonable probability standards and interpreted the legal certainty standard as requiring the defendant to prove to a legal certainty that the amount in controversy requirement is satisfied as opposed to requiring proof to a reasonable probability that the amount in controversy exceeds the minimum. *Id.*

some courts require defendant to "show that it does not appear to a legal certainty that the plaintiff's claim is for less than the jurisdictional amount") (citing *Fountain v. Black*, 876 F.Supp. 1294, 1297 n. 4 (S.D.Ga.1994); *Partlow v. Jones Motor Co.*, 736 F.Supp. 744 (E.D.Mich.1990)); 14C Wright *et al.*, *supra*, at § 3742, at 91–92 (stating that some courts apply most lenient approach of inverted legal certainty test) (footnote omitted).

Finally, some courts have applied a preponderance of the evidence standard for cases in which the plaintiff does not demand specified damages. Most courts of appeals that have considered the issue of the proper test have adopted this standard. *See, e.g., Gilman v. BHC Secur.*, 104 F.3d 1418, 1421 (2d Cir.1997); *Sanchez*, 102 F.3d at 404; *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411–12 (5th Cir.1995); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993);[8] *Gafford v. General Elec. Co.*, 997 F.2d 150, 155–61 (6th Cir.1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993); *see also* Noble–Allgire, *supra*, at 694. Many district court judges within the Third Circuit have also endorsed this standard. *See, e.g., Imperial Spirits, USA Inc. v. Trans Marine Int'l Corp.*, No. CIV.A. 98–5469(JWB), 1999 WL 172292, at *2 (D.N.J. Feb. 17, 1999) (adopting preponderance of evidence or "more likely than not" standard); *Irving*, 97 F.Supp.2d at 654 (reaffirming commitment to preponderance standard); *Mercante*, 1997 WL 230826, at

*2 ("Therefore, I find that for a defendant to defeat a motion for remand after removing a complaint seeking unspecified damages and originally filed in state court, the defendant must show by a preponderance of the evidence that the plaintiff's claims exceed the jurisdictional amount."); *Feldman v. New York Life Ins. Co.*, No. CIV. A. 97–4684, 1998 WL 94800, at *3–*4 (E.D.Pa. March 4, 1998) (adopting preponderance standard).

Those courts adopting the preponderance of the evidence standard have not defined it in a uniform manner. Some courts interpret the preponderance of the evidence standard as requiring the defendant to prove that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Sanchez*, 102 F.3d at 404 (requiring defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]"); *Tapscott*, 77 F.3d at 1357 (same); *Gafford*, 997 F.2d at 158 (same); *Imperial Spirits, USA Inc.*, 1999 WL 172292, at *2 (same) (citations omitted). Other courts, however, have seen the standard as requiring the defendant to show a reasonable probability of the plaintiff's claims exceeding the amount in controversy requirement. *Gilman*, 104 F.3d at 1421 (requiring defendant to prove to reasonable probability that claim exceeds minimal amount and to justify allegations by preponderance of evidence); *Shaw*, 994 F.2d at 366 ("Defendants seeking removal may meet that burden by a preponderance of the evidence, ... which we take to mean

---

**8.** The Fifth Circuit actually embraces a multipart analysis. When it is " 'facially' apparent from the state court petition that the amount in controversy is likely to exceed [the jurisdictional requirement], then the defendant need only point this out to successfully bear its burden." *Cross v. Bell Helmets, USA*, 927 F.Supp. 209, 212–13 (E.D.Tex.1996); *see also Marcel v. Pool Co.*, 5 F.3d 81, 84 (5th Cir. 1993). If it is not facially apparent that the damages are likely to exceed the jurisdictional minimum, "the defendant must prove by a

'preponderance of the evidence' " that the amount in controversy requirement is met. *Cross*, 927 F.Supp. at 214 (citations omitted). If it is facially apparent that the amount in controversy requirement is satisfied, the preponderance of the evidence requirement would be met as well because something that is facially apparent seems to be supported by a preponderance of the evidence. Therefore, this additional analysis does not appear significant.

proof to a reasonable probability that jurisdiction exists." (citation omitted)).

While a slight difference in language could prove significant in some circumstances, these two variations of the preponderance standard appear largely identical. Noble–Allgire, *supra*, at 697 (stating that difference between two variations "may be purely semantic" given definition of probability) (quoting *Black's Law Dictionary* 1201 (6th ed.1990)). Furthermore, these varying definitions of the preponderance concept indicate that very little difference exists between the preponderance of the evidence standard itself and the separate reasonable probability standard. Ultimately, at least for the facts of this case, the difference between the two variations is largely trivial. The Court will use the "more likely than not" phraseology for the sake of clarity because some courts do associate the reasonable probability language with a completely different standard. *See, e.g., Johnson,* 1999 WL 740690, at \*2 n. 1 (distinguishing between legal certainty, preponderance of evidence, and reasonable probability standards); *Mercante,* 1997 WL 230826, at \*1 (same).

### B. *The Superiority of the Preponderance of the Evidence Standard*

This Court, after considering the above standards, holds that, in the absence of a clear statement from the Third Circuit, the preponderance of the evidence standard is the correct test to be applied when the plaintiff seeks unspecified damages. In cases where the plaintiff demands unspecified damages, the removing defendant must demonstrate that the amount in controversy more likely than not exceeds $75,000. This conclusion is warranted by: (1) the lack of a Third Circuit holding on this question; (2) the confusion inherent in the major alternatives to the preponderance approach; (3) the precedent for the preponderance standard; and (4) the proper

balance the standard provides between the congressionally mandated intent to limit diversity and removal jurisdiction and the equally important goal of providing access to federal court when appropriate.

Most district courts within the Third Circuit have acknowledged that the Third Circuit itself has not clearly indicated the standard to be applied and, therefore, have developed their own approaches.[9] *See, e.g., Mercante,* 1997 WL 230826, at \*1 (stating that Third Circuit "has not defined the precise burden"); *Garcia,* 910 F.Supp. at 165 ("The Third Circuit has not decided the appropriate standard to apply in these circumstances.").

Though this acknowledgment appears correct, certain decisions from the United States District Court for the Eastern District of Pennsylvania have concluded that two Third Circuit opinions clearly indicate how the Third Circuit would resolve this issue of the proper standard to be applied, *Chaparro,* 1999 WL 961035, at \*3 (specifically addressing issue where complaint seeks less than jurisdictional amount but may be amended); *Johnson,* 1999 WL 740690, at \*2, or even directly resolve the question, *International Fleet Auto Sales, Inc.,* 1999 WL 95258, at \*4 n. 7. These district court decisions have relied on the Third Circuit's decision in *Angus v. Shiley Inc.,* 989 F.2d 142 (3d Cir.1993), in which the court of appeals stated "[g]iven that the complaint does not limit its request for damages to a precise monetary amount, the district court ... reasonably found that the actual amount in controversy exceeded the [jurisdictional threshold] for there can be no doubt that a reasonable jury likely could have valued [plaintiff's] losses at over [the jurisdictional threshold]," *id.* at 146 (citations and footnote omitted). They also cite the more recent case of *Meritcare Inc. v. St. Paul Mercury Insurance Co.,* 166 F.3d 214 (3d Cir.1999),

---

9. One reason for the absence of a ruling is the circuit court's inability to review remand orders. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or

otherwise...."); *Hudson United Bank v. LiTenda Mortgage Corp.,* 142 F.3d 151, 156 (3d Cir.1998). Because of this prohibition, the Third Circuit has not had many opportunities to consider the appropriate standard of proof.

in which the Third Circuit stated that "when it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332, the removed case must be remanded even if the jurisdictional deficiency becomes evident only after trial," *id.* at 217 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 289, 58 S.Ct. 586).

The Third Circuit, however, has not determined what the proper standard ought to be, and these statements should not be taken to resolve this rather confusing situation. Even the judges who have emphasized *Angus* and *Meritcare Inc.* admit that the Third Circuit has not expressly considered the proper standard to be used when the plaintiff seeks unspecified damages. *See, e.g., Johnson,* 1999 WL 740690, at *2 n. 1 ("What the moving party's burden is in this context has not, however, been expressly addressed by the Third Circuit."); *International Fleet Auto Sales, Inc.,* 1999 WL 95258, at *4 n. 7 (admitting that Third Circuit has not explicitly addressed debate over appropriate standard to be used when complaint does not allege damages in excess of threshold). The lack of uniformity over the requirements of a legal certainty approach indicates the danger of attempting to resolve this question on the basis of two isolated statements from Third Circuit decisions. The judges who have chosen the applicable standard on the basis of these two cases have characterized the positions of the cases differently. Judge O'Neill saw both cases as pointing to a reasonable probability approach, which he considered to be a mere "affirmative restatement of the legal certainty test." *International Fleet Auto Sales, Inc.,* 1999 WL 95258, at *4 n. 7.[10] Judge Kauffman, on the other hand, interpreted the *Angus* statement as indicating a reasonable probability standard, *Chaparro,* 1999 WL 961035, at *3, and the quotation from *Meritcare* as pointing to the even more lenient inverted legal certainty test, *id.* at *3. Given this confusion, the Court is not required to formulate a test from these two statements, particularly because other district court judges have not done so. *See, e.g., Irving,* 97 F.Supp.2d at 654 (reaffirming commitment to preponderance standard).

The preponderance standard, in our view, avoids the confusion associated with its major alternatives. Even though courts have not defined a preponderance in the same way, this disagreement is largely a matter of semantics and not as significant as the confusion and lack of clarity caused by the use of legal certainty terminology to define both the most and least burdensome tests. *Compare, e. g., Johnson,* 1999 WL 740690, at *2 & n. 1 (embracing standard requiring "moving party to prove to a 'legal certainty' that the plaintiff's claims meet the jurisdictional amount") *with, e.g., Reiff,* 1995 WL 619944, at *3 (adopting converse legal certainty

---

**10.** Judge O'Neill's statements concerning the proper standard in cases of unspecified damages are dicta insofar as the question presented in the case involved a claim for specified, liquidated damages and not unspecified, unliquidated damages. *International Fleet Auto Sales, Inc. v. National Auto Credit & Agency Rent-A-Car,* NO. CIV. A. 97–CV–1675, 1999 WL 95258, at *4–*5 (E.D.Pa. Feb. 22, 1999).

Judge O'Neill emphasized the importance of applying the same standard to jurisdictional challenges in removed cases as a court would apply to diversity cases originally filed in federal court. *Id.* at *4 n. 7. The Third Circuit in *Albright v. R.J. Reynolds Tobacco Co.,* 531 F.2d 132 (3d Cir.1976), concluded that different standards should be applied in these two contexts, *id.* at 136. *Albright* involved a plaintiff claiming that a remand to state court was necessary because the district court had dismissed an identical diversity action filed originally in federal court on the grounds that it was "convinced to a legal certainty that the evidentiary material submitted will not support a claim in excess of the jurisdictional minimum of $10,000." *Id.* at 134 (quoting *Albright v. R.J. Reynolds Tobacco Co.,* 350 F.Supp. 341, 352 (W.D.Pa.), *aff'd,* 485 F.2d 678 (3d Cir.1973)). The Third Circuit affirmed the district court's denial of remand because the plaintiff's state court praecipes alleged an amount in controversy exceeding the required minimum. *Id.* at 135. This case, while it indicates that courts should not be tied to standards developed in the original jurisdiction context, does not resolve the issue at hand since the plaintiff actually alleged damages in excess of the jurisdictional threshold. *Id.* at 134.

standard) (citations omitted). Furthermore, the reasonable probability standard is ambiguous insofar as some courts view it as its own independent standard, *see, e.g., Johnson,* 1999 WL 740690, at *2 n. 1, some see it as a restatement of the legal certainty approach, *see, e.g., International Fleet Auto Sales, Inc.,* 1999 WL 95258, at *4 n. 7, and others view it as merely a way to define the preponderance of the evidence standard, *see, e.g., Shaw,* 994 F.2d at 366. The preponderance burden of proof, particularly when defined as requiring the defendant to prove that the amount in controversy more likely than not exceeds $75,000, avoids this unnecessary confusion of terminology.

The preponderance of the evidence standard possesses a significant degree of precedential support. The United States Supreme Court, admittedly in a case dealing with the then-existing amount in controversy requirement for federal question cases, embraced the preponderance standard. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."). Many circuit courts as well as district court judges within the Third Circuit have adopted this standard. In light of this case law, we believe that the preponderance of the evidence approach is the proper method to follow.

Jurisdictional policies also support the preponderance of the evidence standard. The standard provides the proper balance between "the defendant's right to remove and the federal interest in limiting diversity jurisdiction." *See, e.g., Mercante,* 1997 WL 230826, at *2 (quoting *Gafford,* 997 F.2d at 160). The legal certainty test, defined as requiring the defendant to prove to a legal certainty that the amount in controversy is satisfied, inappropriately requires the defendant to "research, state and prove the plaintiff's claim for damages." *Gafford,* 997 F.2d at 159. On the other hand, the application of less burdensome standards may result in "an unwarranted expansion of federal diversity jurisdiction" in removed cases contrary to the congressionally mandated limitations on both diversity and removal jurisdiction. *See, e.g., Sanchez,* 102 F.3d at 403. The preponderance standard also ensures that the plaintiff remains to some extent the master of the claim, *see, e.g., Mercante,* 1997 WL 230826, at *2 (quoting *De Aguilar,* 47 F.3d at 1411–12), while it safeguards the defendant's statutory right of access to the federal forum.

The Court, therefore, adopts the preponderance of the evidence standard for cases where the plaintiff seeks unspecified damages. Because plaintiffs' Complaint does not ask for a specified amount of damages, we will apply this standard.

### C. *Wal–Mart's Failure to Satisfy the Amount in Controversy Requirement*

■ Wal–Mart has failed to show that it is more likely than not that Phyllis Penn's negligence claim, Kenneth Penn's loss of consortium claim, or even the aggregation of the two claims exceeds $75,000. Even including punitive damages and attorneys' fees in the calculation, Wal–Mart still cannot satisfy the preponderance of the evidence standard.

Wal–Mart's own arguments do not show that the value of Phyllis Penn's negligence claim satisfies the jurisdictional requirement of $75,000. Wal–Mart relies on such general considerations as Phyllis Penn's allegation of "severe" knee injury, (Not. of Removal ¶ 5; Aff. of Richard D. Millet, Esq. dated 6–23–00 ¶ 5), and the possibility that her medical bills may increase, (Aff. of Richard D. Millet ¶ 3). While these contentions may indicate that it is possible for the claims to exceed the minimal amount requirement, they certainly do not demonstrate that it is more likely than not that they do.

The Court, conducting its "own independent appraisal of the value of the claim," *Angus v. Shiley Inc.,* 989 F.2d 142, 145(3d Cir.1993), finds that Wal–Mart cannot satisfy its burden of proof. District courts

have remanded personal injury claims because the amount in controversy requirement was not satisfied. *See, e.g., Mangano v. Halina,* No. CIV. A. 98–5170, 1997 WL 697952, at *5 n. 6 (E.D.Pa. Nov. 3, 1997) (remanding claim alleging soft tissue injuries but not any surgery, hospitalization, permanent injury, specific medical expenses, lost work, or lost earnings); *Reason v. General Motors Corp.,* 896 F.Supp. 829, 835 (S.D.Ind.1995) (finding that defendant had not established to reasonable probability that amount in controversy is satisfied where complaint alleges "severe" injuries to numerous parts of body as well as great pain and suffering).

Phyllis Penn does not allege the types of injury that immediately demonstrate that the amount in controversy exceeds $75,000. *See, e.g., Cross,* 927 F.Supp. at 209 (permitting removal in products liability case against corporate defendant in which plaintiff sought punitive damages and suffered "severe and permanent head injuries"). The materials submitted, while they do contain such items as an allegation of "severe" injury, (Compl.¶ 4), and an observation by doctors that they could do nothing more for Phyllis Penn except surgery, (Certif. of Kristen M. Wilson filed 7–

14–00 ¶ 3), do not refer to any pain and suffering, loss of work, lost wages, or any other factor that might demonstrate a greater chance of a higher recovery. *See, e.g., Shaw v. Thrift Drug, Inc.,* No. CIV. A. 98–5170, 1998 WL 848103, at *1–*2 (E.D.Pa. Dec. 4, 1998) (finding amount in controversy requirement satisfied where plaintiffs alleged variety of damages including bodily injury, medical bills, pain and suffering, and loss of earning); *Mangano,* 1997 WL 697952, at *5 n. 6 (noting absence of such items as lost work and lost earnings). In the end, this Court is left with medical expenses significantly lower than the jurisdictional threshold, (Aff. of Richard D. Millet ¶ 3), and general statements such as that Phyllis Penn suffered severe injuries, (*id.* ¶ 5). In this context, it cannot conclude that Wal–Mart has satisfied its burden of proof under any major standard other than possibly the inverted or converse legal certainty test.[11]

■ Turning to Kenneth Penn's consortium claim, no allegation exists that this claim by itself satisfies the amount in controversy requirement. Neither party even mentions the consortium claim in their submissions.[12] Given the lack of proof as to Phyllis Penn's claim and the total ab-

---

11. Apparently opposing case law does not cast doubt upon our conclusion that the amount in controversy threshold has not been satisfied. In *Reiff v. Convergent Technologies,* Civ. A. No. 95–3575(JEI), 1995 WL 619944 (D.N.J. Oct. 20, 1995), the court denied a motion to remand claims involving carpal tunnel syndrome, *id.* at *3–*4. While this case may appear to support jurisdiction in this context, the court did not apply a preponderance of the evidence or reasonable probability standard but instead used the more relaxed inverted or converse legal certainty test. The court stated that a case is only remanded if "it appears to a 'legal certainty' that the amount in controversy is not satisfied." *Id.* at *3 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Nelson v. Keefer,* 451 F.2d 289, 292–293 (3d Cir.1971)). Phrasing the standard in a slightly different way, the Court stated that jurisdiction is appropriate when the value of the plaintiff's claims "could be reasonably valued in excess" of the jurisdictional minimum. *Id.* at *4 (citing *Nelson,* 451 F.2d at 291). Therefore, this case is only

support for the contention that Wal–Mart could satisfy the inverted legal certainty standard. Wal–Mart probably could show that, given the medical bills and the character of the injury, the plaintiffs' claims "could be reasonably valued in excess" of $75,000. This Court, however, has not adopted this overly relaxed standard of proof.

12. The Court observes that it is questionable whether plaintiffs' claims can even be aggregated to satisfy the amount in controversy requirement given the rule that "the claims of several plaintiffs, if they are separate and distinct, cannot be aggregated for purposes of determining the amount in controversy." *Meritcare, Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 218 (3d Cir.1999) (quoting 14B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3704, at 134 (1994)). Federal courts have typically treated the loss of consortium claim as "separate and distinct" from the personal injury claim, and therefore do not aggregate them. *See, e.g., Burkhardt v. Contemporary Servs. Corp.,* No.CIV.A. 98–2911, 1998 WL

sence of discussion about Kenneth Penn's consortium claim, the Court cannot conclude that the aggregation of both claims more likely than not exceeds $75,000.

■ This conclusion remains unaltered even if the Court considers other forms of damages not expressly raised by Wal–Mart, such as attorneys' fees and punitive damages. Attorneys' fees and costs are generally excluded from the amount in controversy calculations unless they are available under a statute or contractual provision. *See, e.g., Irving,* 97 F.Supp.2d at 656 n. 5. Even if attorneys' fees are included, courts subject the claims to close scrutiny, particularly when they would need to constitute a significant proportion of the award to satisfy the amount in controversy requirement. *Neff v. General Motors Corp.,* 163 F.R.D. 478, 483 (E.D.Pa.1995).

■ Plaintiffs' Complaint, though it seeks attorneys' fees and costs, (Compl.),

does not indicate that Wal–Mart can satisfy its burden of proof through this form of damages. Under New Jersey law, attorneys' fees are only recoverable in certain circumstances, such as pursuant to a procedural rule or statute. N.J. Ct. R. 4:421–9.[13] This action appears to be a typical common law tort case and not a statutory cause of action in which attorneys' fees.are expressly authorized. *Cf., e.g., Garcia v. General Motors Corp.,* 910 F.Supp. 160, 166 (D.N.J.1995) (considering award of attorneys' fees under New Jersey Consumer Fraud Act). The rule and statute authorizing the awarding of fees in frivolous cases appear to be the primary basis for any possible recovery of attorneys' fees in this case. N.J. Stat. Ann. § 2A:15–59.1;[14] N.J. Ct. R. 1:4–8.[15] Even if fees.were awarded because of any future frivolousness on the part of Wal–Mart and could be considered in calculating the amount in controversy,[16] Wal–Mart cannot show that

464914, at *2 (E.D.Pa. Aug. 7, 1998) (stating that personal injury and loss of consortium claims cannot be aggregated). This conclusion depends on the characterization of the claim by state law. *Rodery v. Hardee's Food Sys., Inc.,* 995 F.Supp. 999, 1000–01 (E.D.Mo. 1998) (holding that loss of consortium claim is independent cause of action under Missouri law); *Reason v. General Motors Corp.,* 896 F.Supp. 829, 834 (S.D.Ind.1995) (concluding that loss of consortium claim under Indiana law, although "derivative" of the injured spouse's claim, is generally considered independent cause of action). *But see Burkhardt,* 1998 WL 464914, at *2 (reaching conclusion that loss of consortium claim is separate and distinct without considering state law). Because the Court concludes that, even with aggregation, the amount in controversy requirement is unsatisfied, it does not reach the question of whether New Jersey's loss of consortium claim is a separate and distinct action for purposes of federal diversity jurisdiction. *Cf., e.g., Carter v. University of Med. and Dentistry of N.J.,* 838 F.Supp. 957, 968–70 (D.N.J. 1993) (discussing in context of Statute of Limitations nature of consortium claim as sometimes "derivative" and sometimes "independent").

13. New Jersey Court Rule 4:42–9(a) provides: No fee for legal services shall be allowed in the taxed costs or otherwise, except

. . . .

(7) *As expressly provided by these rules with respect to any action,* whether or not there is a fund in court.

(8) *In all cases where counsel fees are permitted by statute.*

14. This statute provides:

A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous. N.J. Stat. Ann. § 2A:15–59.1.

15. New Jersey Court Rule 1:4–8(d) provides that a court may issue "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation [of this Rule against frivolous litigation]."

16. One district court did consider the possibility of attorneys' fees under a Georgia statute similar to the New Jersey provision. *Blank v. Preventive Health Programs, Inc.,* 504 F.Supp. 416, 421 (S.D.Ga.1980). The Court does not consider plaintiffs' motion for attorneys' fees under the remand statute in this calculation because it is not part of the plaintiffs' cause of action.

the award of fees in what appears to be a standard premises liability action more likely than not ensures that the plaintiffs' claims exceed $75,000. *Cf. Neff,* 163 F.R.D. at 484 ("This is merely a case about allegedly defective automobile brakes, nothing more.")

 Any claim of punitive damages does not satisfy the amount in controversy requirement in this case. Punitive damages are included in the amount in controversy calculation. *See, e.g., Garcia,* 910 F.Supp. at 165 (quotation omitted). As with claims for attorneys' fees, they are subject to close scrutiny when, in order to satisfy the threshold, they need to represent a large share of any possible recovery. *See, e.g., Meritcare,* 166 F.3d at 222–23 (quoting *Packard,* 994 F.2d at 1046). In this case, the plaintiffs do not specifically plead a demand for punitive damages, but this absence is not necessarily a bar to an eventual award. *LoRocco v. N.J. Mfrs. Indem. Ins. Co.,* 82 N.J.Super. 323, 331, 197 A.2d 591, 595 (App.Div.1964) (stating that failure to specifically plead punitive damages is not necessarily a bar when defendant is liable for malicious wrong). A court does not take into account "wholly insubstantial and frivolous" claims in calculating the amount in controversy. *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 852 (3d Cir.1992). In order to recover punitive damages in an ordinary tort action, the plaintiff must show wanton recklessness or maliciousness on the part of the defendant. *See, e.g., Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224, 1230 (1984). Not only do the pleadings lack any allegations of recklessness or maliciousness, but any allegation of such a state of mind would appear insubstantial and frivolous. Even if punitive damages could be recovered, Wal–Mart could not show that the amount of recovery would satisfy the amount in controversy requirement.

Given the above reasons, the Court concludes that Wal–Mart has not shown that the plaintiffs' claims exceed the amount in controversy requirement of $75,000.

Therefore, the Court will remand this case to the Superior Court of New Jersey.

## II. *Attorneys' Fees*

 The plaintiffs seek the award of costs and attorneys' fees arising out of the removal of this case and permission to prepare a certification for time expended because of the removal. For the reasons given below, the Court, in its discretion, denies plaintiffs' request for costs, attorneys' fees, and permission to file a certification.

The statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The district court possesses broad discretion over whether to require the payment of these costs and expenses. *See, e.g., Mints v. Educational Testing Serv.,* 99 F.3d 1253, 1260 (3d Cir.1996) (emphasizing district court's discretion and flexibility in determining whether to mandate payment of costs and expenses). In exercising its discretion, the district court is not constrained by firm criteria. *Id.* Bad faith, however, is not a prerequisite to an award. *Id.* The court should see whether a colorable legal basis exists for removal and whether the defendant's assertions are "if not frivolous, at best insubstantial." *Id.* at 1261.

The Court concludes that an award of attorneys' fees and costs is not appropriate in this case. The Court reaches this conclusion primarily because of the uncertainty about defendant's burden of proof in the context of the amount in controversy requirement. Under a less jurisdictionally restrictive standard such as the inverted legal certainty approach, Wal–Mart's assertions concerning the value of Phyllis Penn's personal injury claim are at least colorable. Therefore, the Court will remand this case to the Superior Court of

New Jersey without an award of attorneys' fees and costs.