**Helen W. ANGUS, Appellant,**

v.

**SHILEY INC.**

No. 92–3480.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) March 3, 1993.

Decided March 29, 1993.

Irving M. Portnoy, Evans, Portnoy & Quinn, Pittsburgh, PA, for appellant.

G. Daniel Carney, George P. Faines, Thorp, Reed & Armstrong, Pittsburgh, PA, David Klingsberg, Maris Veidemanis, Kaye, Scholer, Fierman, Hays & Handler, New York City, for appellee.

Before: GREENBERG and SCIRICA, Circuit Judges, and ROBINSON, District Judge.[*]

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I.

### BACKGROUND

Helen W. Angus appeals from an order entered on July 22, 1992, which denied her motion to remand this action to the Court of Common Pleas of Allegheny County, Pennsylvania, and which converted defendant Shiley Inc.'s motion to dismiss into a motion for summary judgment which the court then granted. We will affirm.[1]

We decide this appeal on the facts as alleged in Angus's complaint in the common pleas court. Angus, a Pennsylvania citizen, charged that in 1985 Shiley, a California corporation with its principal place of business in California, was in the business of manufacturing and selling Bjork–Shiley Convexo–Concave mitral heart valves for insertion into patients' hearts. On July 29, 1985, a surgeon implanted a Shiley valve into Angus's heart. Shiley manufactured and sold the valve anticipating that it would be implanted without further inspection or testing and knowing that a valve failure was likely to lead to the recipient's death or injury.

According to the complaint, prior to July 29, 1985, Shiley knew that an increasing number of its valves had experienced "strut fracture," *i.e.*, an "outlet strut" would fracture spontaneously and without warning and cause the recipient's death or injury. Furthermore, Shiley recognized that valve recipients who learned of this risk were likely to suffer from extreme anxiety and emotional distress and to change their lifestyles by restricting their activities. On or about April 2, 1991, Angus learned that her valve was at significant risk of a fracture which could lead to her death.

Angus charged that Shiley was liable to her because it deliberately manufactured the valves notwithstanding its knowledge of the strut fracture problem, failed to warn Angus of the problem, misrepresented the product, and concealed its knowledge of the problem.[2] Angus further charged that by reason of Shiley's conduct

---

[*] Honorable Sue L. Robinson, United States District Judge for the District of Delaware, sitting by designation.

1. Shiley's brief indicates that we should exercise plenary review, and we will do so. While insofar as we address the merits of the action that standard of review clearly is applicable, a reasonable argument could be made that our review of the district court's order denying the motion to remand should be deferential because the order depended upon the court's assessment of the quantum of Angus's damages. *See Nelson v. Keefer*, 451 F.2d 289, 294 (3d Cir.1971). We, however, will not pass on this point because we cannot prejudice Angus by exercising plenary review.

2. Angus's allegations of wrongdoing were stated more expansively, but we need not describe them further. At worst, Shiley was charged with deliberately manufacturing and marketing a dangerous product without adequate warnings, and with covering up the product's problems.

she suffers from severe mental anguish, anxiety, fear, worry, depression, and other emotional distress including constant fear of sudden death or permanent physical injury. Furthermore, Angus contended that her mental state has caused physical ailments including sleep disturbances, frequent panic feelings, nervousness with breathing difficulties, headaches, insomnia, uneasiness, tenseness, and psychiatric disturbances including mixed anxiety and depression. She further pleaded that these conditions required or may require her to expend money for medical and psychiatric attention, impaired her life style, and caused her to suffer a loss of enjoyment of life style.

As a result Angus asserted that Shiley was liable to her for "intentional infliction of emotional distress," "punitive damages," and "negligent infliction of emotional distress." Thus, she sought to recover on three counts, one for each of these theories, in each count seeking damages "in excess" of $20,000.

Shiley filed a timely notice removing the case to the district court. Shiley asserted that it believed Angus's claimed damages would exceed $50,000, exclusive of interest and costs, and that the matter was thus within the jurisdiction of the district court under 28 U.S.C. § 1332 and was removable pursuant to 28 U.S.C. § 1441(a). Shiley attached an affidavit of its attorney to the notice of removal which, though denying that Shiley was liable, recited his belief that Angus's claim exceeded $50,000, exclusive of interest and costs.

Angus filed an "answer to notice of removal" in the district court denying that she claimed damages in excess of $50,000 and indicating that she "hereby stipulates that her damages do not exceed the sum of $50,000.00." Thus, she contended that the case had not been removed properly to the district court and asked that it be remanded to the state court. The district court treated the answer as a motion to remand.

Shiley filed a motion to dismiss in the district court pursuant to Fed.R.Civ.P. 12(b)(6), pointing out that the valve had not failed and was functioning properly. Ac-

cordingly, Shiley asserted that Angus "failed to state any claim against [it] because [she] has not sustained any legally-cognizable present injury." Shiley contended that Angus simply claimed that the "valve may eventually fail."

The district court disposed of the case in a memorandum opinion and accompanying order of July 22, 1992. The court held, citing *Edwards v. Bates County*, 163 U.S. 269, 16 S.Ct. 967, 41 L.Ed. 155 (1896), and *Government of Virgin Islands v. Sun Islands Car Rentals, Inc.*, 819 F.2d 430, 432 (3d Cir.1987), that it had jurisdiction because Angus's three claims totaled $60,000. It then said that even if the two claims for infliction of emotional distress were treated as one, it was still likely that the $50,000 jurisdictional threshold was met because Shiley filed an affidavit detailing its good faith belief that the claimed damages exceeded the jurisdictional amount.

The court then held that Angus's stipulation that the amount in controversy did not exceed $50,000 was ineffective as it was filed after the case was removed and that Shiley was entitled to invoke federal jurisdiction predicated on the allegations in the complaint. Accordingly, because jurisdiction attached when the case was removed, Angus could not defeat it with her subsequent stipulation.

The court next addressed the case on the merits, indicating that it would treat Shiley's motion to dismiss as a motion for summary judgment. It said that while ordinarily it would give a plaintiff an opportunity to present additional materials to meet a motion to dismiss converted into a motion for summary judgment, it would not do so in this case because nothing could change the facts that the valve always functioned properly and Angus's emotional distress was related to a revelation of the valve problems to her by a third party rather than to Shiley's conduct. The court acknowledged that while under Pennsylvania law, which the parties agree is applicable, there might be recovery for emotional distress without a physical injury, such a recovery could be possible only if the defendant's conduct was so outrageous that

it went " 'beyond all possible bounds of decency; and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987)). Ultimately the court followed *Brinkman v. Shiley, Inc.*, 732 F.Supp. 33 (M.D.Pa.) (granting summary judgment to defendant on similar facts), *aff'd*, 902 F.2d 1558 (3d Cir.1989) (table), and granted the motion for summary judgment. Angus then appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

## DISCUSSION

### A. *The jurisdictional issue.*

Angus first contends that the district court should have remanded the case to the Court of Common Pleas of Allegheny County because the amount in controversy did not exceed the sum or value of $50,000, exclusive of interest and costs, as required for the exercise of diversity jurisdiction under 28 U.S.C. § 1332(a). Thus, in Angus's view, Shiley could not remove the case under 28 U.S.C. § 1441(a). In this regard she cites *Boyer v. Snap–On–Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991), for the proposition that the removal statutes are "to be strictly construed against removal and all doubts should be resolved in favor of remand." She maintains that she has only one claim

for emotional distress predicated on alternative theories. Therefore, according to Angus, her total claim was for damages in excess of only $40,000, $20,000 compensatory and $20,000 punitive. She also points out that in her answer to the notice of removal she stipulated that her damages do not exceed $50,000.

■ As an initial matter, we note that Angus's stipulation that her damages do not exceed $50,000 has no legal significance because a plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293–94, 58 S.Ct. 586, 592–93, 82 L.Ed. 845 (1938); *Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 135 (3d Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976).[3] Instead, we consider only the amount in controversy as alleged in Angus's complaint. After doing this, we hold that the district court correctly refused to remand the matter.

■ The general federal rule is to decide the amount in controversy from the complaint itself. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). Assuming, as Angus's urges us to do, that the complaint asserts only two claims, one for compensatory damages in excess of $20,000, and one for punitive damages in excess of $20,000, we find, as did the district court, that the jurisdictional minimum is met. Contrary to

---

**3.** Angus cites *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F.Supp. 1305 (E.D.Ky.1990), in an attempt to validate her stipulation for jurisdictional purposes. In *Cole*, the plaintiff brought a state court action for outrageous conduct, defamation, severe emotional and physical pain, and loss of enjoyment of life charging that the defendant's employees falsely accused her of stealing a carton of cigarettes. In accordance with state practice, she alleged that damages would exceed the requisite state court jurisdictional amount of $4,000. After the defendant removed the action, the plaintiff filed a stipulation that her damages would not exceed $40,000. The district court remanded the matter in light of the stipulation, pointing out that the defendant's "removal decision, albeit made in good faith, could only have been based on speculation." *Id.* at 1309.

*Cole* obviously is distinguishable from this case because there was nothing speculative in Shiley's assessment of the value of Angus's claims. Thus, we have no occasion to consider whether we should follow *Cole*. We do indicate, however, that where a complaint is ambiguous as to the damages asserted and the controversy seems small, it is conceivable that a court justifiably might consider a subsequent stipulation as clarifying rather than amending an original pleading. There is, after all, a distinction between explaining and amending a claim. Of course, as the Supreme Court explained in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, a plaintiff seeking to guarantee against removal "may resort to the expedient of suing for less than the jurisdictional amount." 303 U.S. at 294, 58 S.Ct. at 593.

Angus's contention, the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *Carey v. Pennsylvania Enters., Inc.,* 876 F.2d 333, 337 n. 12 (3d Cir.1989); *Navarro v. Subaru of America Operations Corp.,* 802 F.Supp. 191, 193 (N.D.Ill.1992); *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.,* 670 F.Supp. 591, 596 (M.D.Pa.1986). Here, Angus's complaint seeks *at least* $40,000 in compensatory and punitive damages. Given that the complaint does not limit its request for damages to a precise monetary amount,[4] the district court properly made an independent appraisal of the value of the claim, *Corwin Jeep Sales,* 670 F.Supp. at 596, and reasonably found that the actual amount in controversy exceeded $50,000 for there can be no doubt that a reasonable jury likely could have valued Angus's losses at over $50,000. *Cf. Nelson v. Keefer,* 451 F.2d 289, 294–96 (3d Cir. 1971) (holding that district court properly refused to exercise diversity jurisdiction where in its judgment the upper limit of plaintiff's action did not exceed the jurisdictional floor).

In reaching our result, we note that contrary to Angus's contention, *Boyer v. Snap–On–Tools Corp.* supports our decision. In *Boyer,* the defendants sought to remove on a diversity basis a case in which the plaintiff and certain of the defendants were not diverse. In that context, we indicated that the removing defendant has a heavy burden of persuasion to demonstrate that the plaintiffs fraudulently have joined a party to destroy diversity jurisdiction and that all doubts should be resolved in favor

of remand. 913 F.2d at 111. Thus, to avoid remand, the defendant was required to demonstrate that there was no possibility that a state court would find that the plaintiff pleaded a valid cause of action against a defendant who was not diverse.

The reasoning of *Boyer* requires an affirmance of the order denying remand for in *Boyer* we emphasized that the district court could disregard a party for diversity purposes only following a generous reading of the complaint. *Accord Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851–52 (3d Cir.1992). Here a similarly generous reading of the complaint requires that the motion to remand be denied for if Angus suffered from the anxiety and ailments she attributed to the valve it would have been unreasonable for the court to hold that her damages could not exceed $50,000.

### B. *The procedure in the district court.*

■ The district court said that it was treating Shiley's motion to dismiss as if it sought summary judgment. Angus contends that the court erred in this procedure because it did not give the parties a reasonable opportunity as required by Fed. R.Civ.P. 12(b) to present all material made pertinent to a motion under Fed.R.Civ.P. 56. After a careful review, we have not been able to understand why the district court said that it was converting the motion to dismiss into a motion for summary judgment for we see nothing in its opinion referring to matters outside of the pleadings. The district court did consider Shiley's attorney's affidavit reciting his belief that Angus's claim exceeded $50,000, but that affidavit was germane only on the remand issue. The only fact that was not explicitly set forth in the complaint on

---

**4.** We do not address the issue of whether remand would have been appropriate if Angus's complaint stated that her damages were exactly $40,000. We note that such a pleading presents a different legal issue, and at least one court has held that under such circumstances, remand is required absent a showing of bad faith on the plaintiff's part. *See Kliebert v. Upjohn Co.,* 915 F.2d 142 (5th Cir.1990), *vacated on grant of rehearing in banc,* 923 F.2d 47 (5th Cir.), *dismissed after settlement,* 947 F.2d 736 (5th Cir.

1991); *see also Hicks v. Universal Housing, Inc.,* 792 F.Supp. 482, 484 (S.D.W.Va.1992) (holding that where plaintiff demanded judgment for only $49,900, removal was inappropriate regardless of what his actual damages might be). It is possible that the determination of whether remand would be appropriate when damages of $50,000 or less are demanded would depend in part on whether under state law the plaintiff is limited to the damages claimed.

which the court relied in its determination on the merits was that the valve had not failed. Yet that is the fair inference to be drawn from the complaint for Angus did not plead that the valve had malfunctioned. Thus, notwithstanding the district court's contrary statement, the motion to dismiss was not converted into a motion for summary judgment. In any event, as discussed below, even if the motion had been converted without notice, the error was harmless because Angus could prove no set of facts to support a recovery on the complaint she filed. *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 284–85 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir.1989).

## C. *The merits.*

Angus basically contends that under Pennsylvania law a purchaser of a properly functioning product can recover damages against its manufacturer even though the product has caused no direct physical harm to her and she cannot plead that it ever will. Neither party points to any Supreme Court of Pennsylvania precedent directly controlling the result. Nonetheless, based on the cases involving the infliction of emotional distress, we are convinced that the district court correctly found that no basis for relief was stated in Angus's complaint.[5]

It seems to us that the Supreme Court of Pennsylvania would find that no relief may be granted on the allegations of the complaint here for two independent reasons, either of which would bar this action. First, whatever may have been true in other cases, Angus has not alleged that the valve implanted in her is defective, a prerequisite to liability in a products liability action. *See Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 458 (1992). While An-

gus has not pleaded this case as a classic products liability action, there is no escaping that her action is dependent on Shiley's having supplied the valve. Thus, regardless of how Angus pleaded her claims, they include a products liability aspect. Second, Angus has not suffered a compensable injury as the direct impact from the manufacture, sale, and implanting of the valve was on her emotional state and the allegations of this case will not support a recovery for emotional injuries. *See Deleski v. Raymark Indus., Inc.*, 819 F.2d 377, 380 (3d Cir.1987); *Brinkman v. Shiley, Inc.*, 732 F.Supp. at 34; *Beradi v. Johns–Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067, 1071–72 (1984).[6]

We are aware, as was the district court in *Brinkman*, that Pennsylvania courts have recognized causes of action for intentional infliction of emotional distress even though the plaintiff has not suffered a direct physical injury, but these cases have been in narrow situations involving particular plaintiffs in which defendants were accused of wrongful conduct either aimed specifically at the plaintiffs or likely to have a special impact on them as distinguished from a large group of persons. 732 F.Supp. at 34. *See Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118, 121–22 (1970) (stating that where defendant allegedly assisted another person who killed plaintiffs' son in concealing the body, cause of action for intentional infliction of emotional distress could lie); *Banyas v. Lower Bucks Hosp.*, 293 Pa.Super. 122, 437 A.2d 1236, 1238–39 (1981) (defendant's employees allegedly fabricated records to suggest plaintiff killed third party, causing criminal charges to be filed against plaintiff); *see also Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979) (in banc) (defendant's team physician falsely stated to the press that plaintiff suffered

---

**5.** We note that Angus does not allege that she intends to replace the valve and thus she does not ask that Shiley be required to pay for the costs involved in removing and/or replacing the valve, and any pain and suffering from such an operation. Accordingly, we do not address whether such relief would be allowed under Pennsylvania law.

**6.** While Angus pleads that she suffers from physical ailments as a result of Shiley's wrong-

ful acts, because she attributes them to her emotional injuries, they do not change our result. *Cf. Holliday v. Consolidated Rail Corp.*, 914 F.2d 421, 425 (3d Cir.1990) (holding that action under FELA in which recovery for emotional injuries is not allowed, different result not required merely because emotional conditions manifested in physical consequences), *cert. denied,* —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991).

from a potentially fatal disease). We find these cases of limited precedential value here for we are convinced that the Pennsylvania Supreme Court would not apply their principles in a situation in which the alleged wrongdoing was directed at a class of consumers rather than a particular plaintiff.[7] If the Supreme Court of Pennsylvania recognized a cause of action for intentional infliction of emotional distress on the allegations of Angus's complaint, it effectively would sanction a large, if not vast, number of lawsuits by consumers who obtained properly functioning valves. We do not believe that it would do any such thing.[8]

Finally we acknowledge that Angus contends that Shiley is liable to her because it failed to warn her of the dangers associated with the valve. But this allegation at least at this time cannot be the basis for liability because the valve has not failed and the lack of warning did not cause Angus somehow to misuse the valve or was not otherwise the proximate cause of injury to Angus. *See Morris v. Pathmark Corp.,* 405 Pa.Super. 274, 592 A.2d 331, 333 (1991), *allocatur granted,* 530 Pa. 644, 607 A.2d 254 (1992).

### III.

### CONCLUSION

The order of July 22, 1992, will be affirmed.

---

**7.** We recognize that in a divided decision in *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271 (3d Cir.1985), we reversed an order of the district court insofar as it dismissed a claim for intentional infliction of emotional distress in an asbestos-exposure case under Pennsylvania law with products liability overtones. But we do not regard *Wisniewski,* which we note the majority characterized as an "extremely close" case, *id.* at 277, as contrary to our result. In *Wisniewski,* we pointed out that the plaintiffs were "the wife and children of men who have died from exposure to asbestos." *Id.* at 273. Indeed, we even characterized the case as involving the question of whether relatives of workers would have claims for "intentional infliction of emotional distress caused by the illness and subsequent deaths of the workers." *Id.*

---

Furthermore, the plaintiffs in *Wisniewski* alleged that they feared contracting cancer "due to household exposure to asbestos contained on their husband's/fathers' work clothes." *Id.* Thus, *Wisniewski* involved an emotional distress claim with hybrid characteristics in that the plaintiffs were subject to the stress from fear of the consequences of exposure to a product that actually had caused the death of their fathers or husbands as well as being subject to the stress caused by the deaths themselves. Angus makes no equivalent allegations.

**8.** We also point out that courts might not be able to draw a principled distinction between heart valves and other properly functioning products for liability purposes.