**THE BACHMAN COMPANY, Plaintiff,**

v.

**John C. MACDONALD, d/b/a Bachman of Bloomfield, Defendant.**

**No. CIV. A. 00–5382.**

United States District Court,
E.D. Pennsylvania.

April 9, 2001.

G. Thompson Bell, III, Stevens and Lee, Reading, PA, Jeffrey D. Bukowski, Stevens & Lee, P.C., Reading, PA, for plaintiff.

John C. MacDonald, East Windsor, CT, pro se.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Defendant John C. MacDonald, d/b/a Bachman of Bloomfield ("Mr. MacDonald" or "Bloomfield Bachman") removed the Action for Declaratory Judgment filed by Plaintiff, The Bachman Company, from the Court of Common Pleas of Berks County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. sections 1441 and 1446(a).[1] Presently before this Court is The Bachman Company's Motion to Remand to State Court and Mr. MacDonald's opposition thereto in addition to Mr. MacDonald's Motion to Dismiss for Improper Venue, or in the Alternative, Transfer to the U.S. District Court, District of Connecticut. For the reasons set forth below, The Bachman Company's Motion to Remand is granted and Mr. MacDonald's Motion to Dismiss is denied as moot.

## I. Factual Background

On or about June 15, 1984, Mr. MacDonald, sole proprietor of Bachman of Bloomfield located in East Windsor, Connecticut, entered into a perpetuity "wholesale agreement" contract ("Wholesaler Agreement") with The Bachman Company, a Pennsylvania snack food manufacturer. (Def.'s Mot. Dismiss, or in the Alternative, to Transfer at 2.) The Wholesaler Agreement provides Mr. MacDonald with the exclusive distribution rights within the sales distribution territory of Northern Connecticut and Western Massachusetts.[2] (Id.) On September 25, 2000, in the Court of Common Pleas of Berks County, Pennsylvania, The Bachman Company instituted an Action for Declaratory Judgment regarding the price it is required to pay Mr. MacDonald for the repurchase of certain distribution rights pursuant to Paragraph 12.1 of the Wholesaler Agreement.[3]

---

1. Mr. MacDonald is a pro se defendant.

2. Mr. MacDonald and The Bachman Company have had prior legal disputes involving the aforementioned Wholesaler Agreement. (See Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct.) In 1989, Mr. MacDonald filed a Complaint against The Bachman Company in the United States District Court for the District of Connecticut (No. B–89–234 (JAC)) alleging that The Bachman Company breached its implied covenant of good faith and fair dealing and committed unfair trade practices in violation of the Connecticut Unfair Trade Practice Act, Conn. Gen.Stat. section 42–110a et seq. (Id. at Ex. K.) In May, 1994, a jury found in favor of Mr. MacDonald, awarding him damages. (Id.) The jury also awarded Mr. MacDonald punitive damages because they found that The Bachman Company's breach of the implied covenant of good faith and fair dealing was intentional. (Id.) The verdict was upheld by the United States Court of Appeals for the Second Circuit (Nos. 95–7337L and 95–7373XAP). (Def.'s Mot. Dismiss for Improper Venue, or in Alternative, to Transfer at 2.) Subsequently, the parties resolved their legal dispute through a series of stipulations that were finalized in a Court Order on or about May 25, 2000. (Id.) After the Court Order, Mr. MacDonald alleges that The Bachman Company knowingly violated the Order on several occasions. (Id.) On November 14, 2000, Mr. MacDonald filed a new Complaint against The Bachman Company in the United States District Court for the District of Connecticut (No. 300–CV–2188) which is still pending. (Id.)

3. Paragraph 12.1 of the Wholesaler Agreement states:

 *Payment to Wholesaler.* In the event that future market conditions and/or the demands of customers require Bachman to serve any Outlet by warehouse delivery or any method other than direct store door delivery, Bachman shall have the right to repurchase the distribution rights for such customer(s) from Wholesaler at a price equal to the fair market value of the rights repurchased plus any sum the Wholesaler is required to his Distributors for their right to such distribution.

(Pl.'s Mem. Law Supp. Mot. Remand State Ct. at 1.) Specifically, The Bachman Company's "declaratory judgment action arises from Bachman's exercise of its right to repurchase [Mr.] MacDonald's Wholesale Distribution Rights to the 7–Eleven, Sam's Club, BJ's Wholesale Club, and Costco stores in his Sales Area, as provided in Paragraph 12.1 of the parties' Wholesaler Agreement." [4] (*Id.* at 5.)

On October 24, 2000, pursuant to 28 U.S.C. sections 1441 and 1446(a), Mr. MacDonald removed The Bachman Company's action for declaratory relief from the Court of Common Pleas of Berks County, Pennsylvania, to this Court.[5] (*Id.* at 1; *see also* Def.'s Mot. of Removal.) In his Notice of Removal, Mr. MacDonald asserted that this Court has original jurisdiction over

the case based on diversity jurisdiction, 28 U.S.C. section 1332.[6] (Def.'s Opp'n Br. Remand to State Ct., Ex. B. (Notice of Removal.)) Mr. MacDonald states that this Court has jurisdiction based on 28 U.S.C. section 1332 because complete diversity of citizenship exists between the parties and the matter in controversy exceeds $75,000. (*Id.*)

On December 18, 2000, Mr. MacDonald filed a Motion to Dismiss [The Bachman Company's Declaratory Action] for Improper Venue, or in the Alternative, Transfer to the U.S. District Court, District of Connecticut. (*See* Def.'s Mot. Dismiss, or in Alternative, to Transfer.) On January 19, 2001, The Bachman Company filed the instant Motion to Remand to State Court. (*See* Pl.'s Mot. Remand State Ct.) The

---

(Def.'s Mot. Dismiss for Improper Venue, or in the Alternative, to Transfer, Ex. A.)

4. Under the Wholesaler Agreement, Bloomfield Bachman services approximately 250 Outlets in its area. (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct. at 2.) In this case, The Bachman Company seeks to repurchase four (4) accounts. (*Id.*) According to Mr. MacDonald, the accounts consist of a total of thirty-eight (38) existing Outlets—BJ's Wholesale Clubs—five (5) Outlets, Sam's Wholesale Clubs—two (2) Outlets, Costco Wholesale Club—one (1) Outlet, and 7–Eleven Convenience Stores—thirty (30) Outlets. (*Id.*) The Bachman Company argues, on the other hand, that the four (4) accounts consist of a total of twenty-six (26) existing Outlets—BJ's Wholesale Clubs—five (5) Outlets, Sam's Wholesale Clubs—two (2) Outlets, Costco Wholesale Club—one (1) Outlet, and 7–Eleven Convenience Stores—eighteen (18) Outlets. (Pl.'s Mot. Remand State Ct., Ex. B.)

5. In his Notice of Removal, Mr. MacDonald relied on 28 U.S.C. section 1441(a), which reads, in pertinent part, as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division

embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a). Also in his Removal Action, Mr. MacDonald relied on 28 U.S.C. section 1446(a), which reads:

(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).

6. In his Notice of Removal, Mr. MacDonald does not specify the section of 28 U.S.C. section 1332 on which he relies for diversity jurisdiction, however, the Court believes that he relied on 28 U.S.C. section 1332(a)(1), which reads:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States.

28 U.S.C. § 1332(a)(1).

Bachman Company premises its Motion to Remand on the basis that this Court lacks subject matter jurisdiction over the removed diversity action because Mr. MacDonald fails to prove that the amount in controversy exceeds $75,000. (Pl.'s Mem. Law Supp. Mot. Remand State Ct. at 1.)

## II. Standard

In general, a party is able to remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction to hear the matter. *Lumbermans Mut. Cas. Co. v. Fishman,* No. 99–0929, 1999 WL 744016, at *1 (E.D.Pa. Sept.22, 1999) (citing 28 U.S.C. § 1441(b) (1999); *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)). Once the case has been removed, however, "the federal court may remand if there has been a procedural defect in removal." *Kimmel v. DeGasperi,* No. 00–143, 2000 WL 420639, at *1 (E.D.Pa. Apr.7, 2000) (citing 28 U.S.C. § 1447(c) (West 1994)). Remand is mandatory if the court determines that it lacks federal subject matter jurisdiction. *Id.* (citing 28 U.S.C. § 1447(c) (West 1994)). "When a case is removed from state court, the removing party bears the burden of proving the existence of federal subject matter jurisdiction." *Id.* (citing *Boyer,* 913 F.2d at 111). Upon a motion to remand, it is the removing party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand. *Lumbermans,* 1999 WL 744016, at *1 (citing *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir.1992); *Indep. Mach. Co. v. Int'l Tray Pads & Packaging, Inc.,* 991 F.Supp. 687 (D.N.J. Jan.5, 1998)). Removal statutes are strictly construed by Courts and all doubts are resolved in favor of remand.

*Kimmel,* 2000 WL 420639, at *1 (citing *Boyer,* 913 F.2d at 111).

## III. DISCUSSION

Mr. MacDonald's Notice of Removal states that this Court has diversity jurisdiction over this controversy based on 28 U.S.C. section 1332. (*See* Notice of Removal.) Under 28 U.S.C. section 1332, this Court has jurisdiction over this case only if the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). While it is undisputed that complete diversity of citizenship exists among the parties, the question before this Court is whether Mr. MacDonald has established that the amount in controversy exceeds $75,000. In its Motion to Remand to State Court, The Bachman Company argues that remand is proper in this case because the Court lacks subject matter jurisdiction since "Mr. MacDonald has failed to establish that the amount in controversy exceeds $75,000." (Pl.'s Mot. Remand State Ct. at 1.) The Bachman Company specifically argues that Mr. MacDonald has failed to establish the requisite amount in controversy, because his calculations of the amount in controversy are based on outdated, irrelevant and unverified data. (*Id.* at 5.)

### A. Mr. MacDonald's Burden in Removal

As the party asserting jurisdiction, Mr. MacDonald bears the burden of establishing that the matter is properly before this Court. As mentioned earlier, in removal actions, all doubts regarding jurisdiction should be resolved in favor of remand. *See supra* section II. In determining whether the requisite jurisdictional amount has been met, the court must first look to the complaint. *Johnson v. Costco Wholesale,* No. 99–3576, 1999 WL 740690,

at *2 (E.D.Pa. Sept.22, 1999) (citing *Angus v. Shiley, Inc.,* 989 F.2d 142, 145 (3d Cir. 1993)). "If the complaint does not contain a demand for an exact monetary amount, however, the court must make an independent appraisal of the claim and 'after a generous reading of the complaint, arrive at the reasonable value of the rights being litigated.'" *Id.* at *2 (quoting *Feldman v. New York Life Ins. Co.,* No. CIV.A.97–4684, 1998 WL 94800, at *3 (E.D.Pa. Mar.4, 1998); *Angus,* 989 F.2d at 146). Such appraisal is required to include the reasonable value of potential compensatory and punitive damages. *Id.* (citing *Angus,* 989 F.2d at 145–46). In assessing the amount in controversy, the court may also look to the Notice of Removal, stipulations and discovery evidence such as depositions, affidavits, and other documentation that is relevant to the value of the claims at issue. *Id.* (citing *Mangano v. Halina,* No. CIV.A.97–1678, 1997 WL 697952, at *5 (E.D.Pa. Nov.3, 1997)); *See also Irving v. Allstate Indemnity Co.,* 97 F.Supp.2d 653, 654 (E.D.Pa. May 3, 2000) (citing *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 222 (3d Cir.1999)).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has not delineated a precise burden that applies to removing defendants in cases where he or she must show that the amount in controversy exceeds the jurisdictional amount.

*Burkhardt v. Contemporary Services Corp.,* No. 98–2911, 1998 WL 464914, at *2 (E.D.Pa. Aug.7, 1998) (citing *Neff v. Gen. Motors Corp.,* 163 F.R.D. 478, 481 (E.D.Pa.1995)). As a result, "[c]ourts have imposed three different burdens on removing defendants that require them to show that the amount in controversy is greater than the jurisdictional amount." *Id.* at *2. The burden on removing defendants has been defined in the following ways:

> (1) defendant must prove to a 'legal certainty' that plaintiff could ... recover more than $75,000,[7] *Morris v. Brandeis Univ.,* No 99–2642, 1999 WL 817723, at *3 (E.D.Pa. Oct.8, 1999); (2) defendant must show that the claim exceeds the amount in controversy requirement by a preponderance of the evidence, *Werwinski v. Ford Motor Co.,* No. 00–943, 2000 WL 375260, at *1 (E.D.Pa. Apr.11, 2000); (3) defendant need only demonstrate a reasonable probability that the amount in controversy meets the jurisdictional amount. *Int'l Fleet Auto Sales v. Nat'l Auto Credit,* No. 97–1675, 1999 WL 95258 (E.D.Pa. Feb.22, 1999).

*Irving,* 97 F.Supp.2d at 655. In the instant action, Mr. MacDonald argues that the preponderance of the evidence standard applies, while The Bachman Company argues that the legal certainty standard should apply. (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct. at 3; Pl.'s Mem. Law

---

**7.** After examining case law and review of *Morris v. Brandeis Univ.,* No. 99–2642, 1999 WL 817723, at *3 (E.D.Pa. Oct.8, 1999), it appears that the legal certainty standard as stated in *Irving v. Allstate Indem. Co.,* 97 F.Supp.2d 653, 655 (E.D.Pa. May 3, 2000) is misquoted. The Court in *Irving,* while citing *Morris,* stated that under the legal certainty standard, "defendant must prove to a 'legal certainty' that plaintiff could *not* recover more than $75,000." *Id.* at 655 (citing *Morris,* 1999 WL 817723, at *3) (emphasis added). In *Morris,* the Court stated that "[a] plaintiff's prayer for relief controls unless the defendant proves, to a legal certainty, that the plaintiff's claims *are* greater than the amount in controversy requirement." *Morris,* 1999 WL 817723, at *3 (emphasis added). Because the Defendant bears the burden of proving that the amount in controversy exceeds $75,000 on a motion to remand, and since case law reveals that the legal certainty standard requires a defendant to show that the amount in controversy exceeds $75,000 to a legal certainty, this Court has omitted the word "not" from the cited *Irving* Court's opinion. *Irving,* 97 F.Supp.2d at 655.

Supp. Mot. Remand State Ct. at 4.) Although the Third Circuit has not clarified which standard a defendant must employ to meet its burden, Mr. MacDonald fails to prove the requisite jurisdictional amount under any of the three (3) possible standards.

### B. Evidence of Jurisdictional Amount

Mr. MacDonald states that "[t]he Notice of Removal in the instant action reveals that this [jurisdictional] amount totals in excess of $159,000." (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct. at 3.) Both parties agree that the mathematical formula for the amount to repurchase the Wholesaler Rights for the four (4) accounts at issue in this case are based upon the average net weekly sales of the stores multiplied by a multiplier. *See* Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct.; Pl.'s Mem. Law Supp. Mot. Remand State Ct. Both parties also agree that as part of the repurchase, The Bachman Company is required to pay Mr. MacDonald an amount which will reimburse him for the expenses he must pay to his Distributors for their distribution rights ("Distributor Rights").[8] *Id.* Similar to the payment for Wholesaler Rights, the reimbursement price for the Distributor Rights involves a mathematical formula consisting of the average net weekly sales of the stores at issue multiplied by a multiplier. *Id.*

### 1. The Number of Stores at Issue in This Case and Their Corresponding Average Net Weekly Sales Totals

Mr. MacDonald's jurisdictional valuation of $159,000 centers on his contention that there are thirty-eight (38) stores included in the four (4) accounts at issue in this case. *See supra,* section I. at n. 4. The Bachman Company alleges that Mr. MacDonald's calculations are mistaken and bases part of this claim on the contention that there are a total of twenty-six (26) stores at issue in this case. (*Id.*) Not only do the parties disagree about the amount of stores at issue in this case, but the parties also differ about the average net weekly sales of the stores. Mr. MacDonald argues that the average net weekly sales of all of the stores at issue in this case amounts to $3550, while The Bachman Company argues that the average net weekly sales of all of the stores amounts to $1253.30.[9] (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct., Ex. C.; Pl.'s Mem. Law Supp. Mot. Remand State Ct. 10.)

The parties' divergent views on both the number of stores at issue in this case and the average net weekly sales of those stores reveals the confusing and problematic nature of arriving at a determination of the requisite jurisdictional amount in this case. Neither party in this case offers concrete evidence regarding the number of

---

8. Currently, Bloomfield Bachman "has seven (7) independent distributors under personal service contracts." (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct. at 16.)

9. Specifically, Mr. MacDonald contends that the average net weekly sales of each store at issue totals $3550 because of the following estimations of each individual store's average net weekly sales income: Sam's Wholesale Clubs—$800.00; BJ's Wholesale Clubs—$1,000.00; Costco Wholesale Club—$250.00; and 7–Eleven Convenience Stores—$1500.00.

(Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct., Ex. C.)

The Bachman Company contends that the average net weekly sales of each store at issue in this case total $1253.30 based on the following estimations of each individual store's average net weekly sales income: Sam's Wholesale Clubs—$387.00; BJ's Wholesale Clubs—$866.30; Costco Wholesale Club—zero dollars ($0); and 7–Eleven Convenience Stores—zero dollars ($0). (Pl.'s Mem. Law Supp. Mot. Remand State Ct., Ex. A.)

stores at issue and their corresponding average net weekly sales. These circumstances are especially problematic because such information is elemental to this Court's determination of whether Mr. MacDonald has met the requisite jurisdictional amount. The only evidence offered by the parties pertaining to these issues are affidavits. These affidavits, however, contain conflicting information based on differing points of view regarding the number of stores at issue and their average net weekly sales. (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct., Ex. C. (MacDonald Affidavit# 1); Pl.'s Mem. Law Supp. Mot. Remand State Ct., Ex. A. (Carpenter Affidavit).) Neither party offers company records, sales receipts, or any other concrete evidence upon which the Court may rely to calculate what is the true number of stores at issue and their corresponding average net weekly sales totals.

Nonetheless, the Court has attempted to deduce the proper number of stores at issue and their corresponding average net weekly sales. To its dismay, the Court is forced to rely heavily upon speculation and unsubstantiated claims in its valuation of the jurisdictional amount. The issues surrounding the number of stores and their average net weekly sales goes directly to The Bachman Company's Action for Declaratory Relief, however, such information is also relevant to this Court's attempt to make a valid ruling regarding the jurisdictional amount. Moreover, although both parties fail to offer sufficient evidence for this Court to determine the number of stores at issue and their corresponding average net weekly incomes, the burden of proof regarding the requisite jurisdictional amount remains at all times with Mr. Mac-

Donald. Therefore, in a case such as this, where the Court is forced to rely on speculation in order to decipher the requisite jurisdictional amount, the Court finds that neither the reasonable probability standard, nor the preponderance of the evidence standard, nor the legal certainty standard have been met.

### 2. The Wholesaler Rights Multiplier and the Distributor Rights Multiplier

Similar to the number of stores at issue in this case and their corresponding average net weekly sales, the multipliers relied upon by the parties in their calculations of the repurchase price of the four (4) accounts are problematic and unsubstantiated. Once again, the Court finds itself without guidance from the parties regarding a fundamental issue in the valuation of this case, but this time it is in the context of multipliers. In calculating his Wholesaler Rights, Mr. MacDonald states that "a multiple of at least 29.8 times average actual and/or estimated weekly sales to an Outlet should be the minimum Bachman should pay to repurchase Outlets." (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct. at 11 (citing Ex. H.)) The Bachman Company counters Mr. MacDonald's Wholesaler Rights multiplier of twenty-nine and eight-tenths (29.8) with the indication that the multiplier should actually be three (3), which was the original multiplier applied by The Bachman Company when it sold the Wholesalership to Mr. MacDonald, and also based on a recent sale by The Bachman Company for similar Wholesaler Rights.[10] (*See* Pl.'s Mot. Remand State Ct.)

---

**10.** Mr. MacDonald argues that the Wholesaler Rights multiplier of three (3) is too low because, at the time he purchased Bloomfield Bachman, The Bachman Company was experiencing financial difficulty and therefore applied a reduced multiplier. (*See* Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct.) Further, he argues that the recent sale for similar rights where the multiplier was three (3) is also unreliable because the sale involved "a sweet-

As for the buy-back calculations of the Distributor Rights, Mr. MacDonald asserts that the proper multiplier is fifteen (15) based on the historical sales of the distribution businesses and the future direction of The Bachman Company. (Def.'s Brief Opp'n Pl.'s Mot. Remand State Ct. at 16.) The Bachman Company fails to offer any substantive evidence pertaining to a Distribution Rights multiplier.[11] (*See* Pl.'s Mot. Remand State Ct.)

### a. The Wholesaler Rights Multiplier

As stated earlier, Mr. MacDonald claims that the proper Wholesaler Rights multiplier is twenty-nine and eight-tenths (29.8). However, Mr. MacDonald's Wholesaler Rights multiplier is mathematically incorrect.[12] Apparently, Mr. MacDonald misconstrues a decimal point for a comma in his calculation, thereby significantly miscalculating the average net weekly sales of the stores at issue. *See supra,* section III.B. at n. 12. Mr. MacDonald relies heavily upon this inaccurate average net weekly sales total for his final calculation of the Wholesaler Rights multiplier of twenty-nine and eight-tenths (29.8). *Id.* Due to such miscalculation, Mr. MacDonald's proffered Wholesaler Rights multiplier is fundamentally flawed and cannot be applied by the Court.

Not only is Mr. MacDonald's suggested Wholesaler Rights multiplier based on a mathematically unsound calculation, but it is also premised on the current valuation of Bloomfield Bachman and the average net weekly sales of the stores at issue. *Id.* Mr. MacDonald's suggested Wholesaler Rights multiplier lacks foundation because he fails to offer the Court evidence to prove the legitimacy of his current business valuation.[13] Also, regarding the

---

heart deal" and pertains to a remote sales territory. (*Id.* at 15.)

**11.** In its' Motion to Remand, the only time that The Bachman Company mentions the multiplier required to properly calculate the buy-back reimbursement for Distributor Rights is to allege that Mr. MacDonald's multiplier of fifteen (15) is inaccurate and unsubstantiated. (Pl.'s Mot. Remand State Ct. at 5.)

**12.** Mr. MacDonald's multiplier of twenty-nine and eight-tenths (29.8) is mathematically incorrect. In his calculation of the average net yearly sales total, Mr. MacDonald apparently misconstrues a decimal point for a comma. Mr. MacDonald uses a multiplier of twenty-nine and eight-tenths (29.8) based on the following incorrect mathematical calculation: Mr. MacDonald divides the average net yearly sales for the stores at issue, which allegedly amounts to a total of $25,103, by fifteen (15), the number of years Mr. MacDonald has owned Bloomfield Bachman, (1985 until 2000). (Def.'s Opp'n Br. Pl.'s Mot. Remand State Ct., Ex. H.) This calculation equals an average net yearly sales total of $1,674. (*Id.*) Mr. MacDonald states that $1,544 is the adjusted average net yearly sales income after subtracting incidental expenses. (*Id.*) Dividing the adjusted average net yearly sales total

of $1544 by fifty-two (52), the number of weeks in a year, Mr. MacDonald erroneously calculates an average net weekly sales total of $29,692. (*Id.*) If calculated properly, the average net weekly sales total would be approximately $29.69.

In his calculation, Mr. MacDonald goes on to divide the alleged present value of his business, $885,000, by the erroneous average net weekly sales total of $29,692, to obtain his proposed multiplier of twenty-nine and eight-tenths (29.8). (*Id.*) If Mr. MacDonald had divided $885,000 by the appropriate average net weekly sales total of $29.69, the final calculation would be approximately $29,808.02. Therefore, if calculated properly, Mr. MacDonald's mathematical formula would necessitate a Wholesaler Rights multiplier of approximately 29,808.

**13.** Mr. MacDonald alleges that Bloomfield Bachman "received offers of $475,000 and $500,000 for the exclusive wholesale distribution rights" in the years of 1985 and 1986. (Def.'s Br. Opp'n Pl.'s Mot. Remand State Ct. at 5.) Mr. MacDonald relies upon these offers to calculate the current value of his business and the Wholesaler Rights multiplier. (*Id.*) However, he fails to offer evidence that such

Wholesaler Rights multiplier, Mr. Mac-Donald fails to offer any concrete evidence (*i.e.*, sales records or receipts) that the average net weekly sales of the stores at issue are as he presents them. This is especially problematic because, as mentioned earlier, The Bachman Company offers conflicting statements about the average net weekly sales of the stores at issue in this case. As for The Bachman Company's proposed Wholesaler Rights multiplier of three (3), such number is also unsubstantiated regarding the current worth of Bloomfield Bachman. Similar to Mr. Mac-Donald, The Bachman Company fails to supply this Court with any relevant evidence or current standards by which the Court could deduce a valid Wholesaler Rights multiplier.

### b. The Distributor Rights Multiplier

Like his Wholesaler Rights multiplier, Mr. MacDonald's Distributor Rights multiplier also lacks foundation. Mr. Mac-Donald bases his valuation of the Distributor Rights multiplier at fifteen (15) because of what he states are historical sales of distribution businesses and the future direction of The Bachman Company. (Def.'s Br. Opp'n Pl.'s Mot. Remand State Ct. at 16.) Without providing the Court with substantive evidence, such as actual proof of such historical sales or the basis upon which he calculated The Bachman Company's future direction, these figures are mere speculation and conjecture regarding the proper Distributor Rights multiplier in this case. The Bachman Company offers the Court virtually no evidence to determine the calculation of a proper Distributor Rights multiplier. (*See* Pl.'s Mot. to Remand State Ct.)

offers were actually given or were an accurate estimation of Bloomfield Bachman's worth in

### c. Efforts to Deduce a Wholesaler Rights Multiplier and a Distributor Rights Multiplier

This Court has attempted, in vain, to deduce proper numbers to adequately represent both the Wholesaler Rights multiplier and the Distributor Rights multiplier. The Court relied upon the parties' pleadings and their accompanying documentation, but was unable to confidently calculate multipliers in which the Court felt adequately and validly represented both parties interests. The proper numeration for the multipliers is especially perplexing because such multipliers would have to be applied to unsubstantiated store numbers and speculative average net weekly sales totals in the Court's final calculation of the requisite jurisdictional amount. *See supra*, section III.B.1. In a situation such as this, where the Court is required to independently calculate the jurisdictional amount of the case and must do so based upon speculative evidence, the party who bears the burden of proving the jurisdictional amount in controversy fails to meet that burden. Thus, the Court finds that Mr. MacDonald fails to prove the jurisdictional amount by any standard, whether it be the standard of reasonable probability, preponderance of the evidence standard, or legal certainty standard.

### C. Jurisdictional Amount

■ The speculative nature of all of the evidence offered in this case regarding the valuation of the repurchase rights at issue leaves this Court unable to calculate a valid and correct jurisdictional amount. The questionable nature of such fundamental elements as the number of stores at issue, their corresponding aver-

1985 and 1986.

age net weekly sales amounts, and the proper multipliers for Wholesaler Rights and Distributor Rights, would make any assessment by this Court of the case's jurisdictional amount based on conjecture. Because the Court cannot rely on conjecture in its determination of the jurisdictional amount at issue, the Court finds that Mr. MacDonald fails to prove, under any of the three (3) applicable standards, that the jurisdictional amount at issue in this case exceeds $75,000. " 'Burdens of proof are meaningful elements of legal analysis, and occasionally, where the evidentiary record is wanting, the burden of proof will determine the outcome of a motion.' " *Irving,* 97 F.Supp.2d at 656 (quoting *Simon v. Ward,* 80 F.Supp.2d 464, 472 (E.D.Pa.2000)). Accordingly, the Court will grant The Bachman Company's Motion to Remand to State Court because Mr. MacDonald has not carried his burden in proving that the amount in controversy requirement has been satisfied. As a result, Mr. MacDonald's Motion to Dismiss, or in the Alternative, Transfer to the United States District Court, District of Connecticut is denied as moot.

### D. Award of Costs and Attorneys Fees

 Finally, The Bachman Company requests an award of "just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." (Pl.'s Mot. Remand State Ct. at 12 (citing 28 U.S.C. section 1447(c))). "Under 28 U.S.C. section 1447(c) the Court, has discretion to make an award of costs and attorney's fees." [14] *Morris,* 1999 WL 817723, at *5 (citing *Mints v. Educ. Testing Serv.,* 99 F.3d 1253, 1260 (3d Cir. 1996)). It is not necessary to a have a finding of bad faith in order for the court to award such costs or fees. *Id.* (citing *Mints,* 99 F.3d at 1260). In this case, the Court will not award any costs or fees in relation to the instant Motion because the Court finds that Mr. MacDonald's removal petition was neither "frivolous" nor "insubstantial" and was presented in earnest. *Id.* (citing *Mints,* 99 F.3d at 1261; *Thomas v. Hanley,* No. Civ.A. 97–2443, 1997 WL 563402, at *7 (E.D.Pa. Sept.2, 1997)).

### IV. CONCLUSION

The Bachman Company's Motion to Remand to State Court is granted because Mr. MacDonald fails to prove that the amount in controversy exceeds the necessary jurisdictional amount of $75,000. As a result, Mr. MacDonald's Motion to Dismiss for Improper Venue, or in the Alternative, Transfer to the United States District Court, District of Connecticut is denied as moot. Lastly, The Bachman Company's request for costs, including attorneys fees, incurred as a result of the removal is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 9th day of April, 2001, upon consideration of Plaintiff's Motion to Remand to State Court (Dkt. No. 13), and Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, Trans-

---

**14.** 28 U.S.C. section 1447(c) reads, in pertinent part, as follows:

(c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

fer to the United States District Court, District of Connecticut (Dkt. No. 9), and the Responses thereto, it is hereby ORDERED that:

1.) Plaintiff's Motion to Remand (Dkt. No. 13) is GRANTED;

2.) Defendant's Motion to Dismiss, or in the Alternative, Transfer (Dkt. No. 9) is DENIED as moot; and

3.) Plaintiff's request for costs and actual expenses, including attorneys fees, incurred as a result of the removal is DENIED.